IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMADEDDIN MUNTASSER,        ) | |
| )             | |
| Petitioner,       ) | |
| )             | |
| v.                            ) | Civil No. 04-CV-11259 RWZ |
| )             | |
| THOMAS RIDGE, Secretary of    ) | |
| Department of Homeland Security, et al.,  ) | |
| )             | |
| Respondents.      ) | |

**MEMORANDUM IN SUPPORT OF RESPONDENTS'
MOTION TO REMAND PROCEEDINGS TO
THE DEPARTMENT OF HOMELAND SECURITY**

In June 2004, Emadeddin Muntasser filed a petition with this Court seeking a hearing on his naturalization application under 8 U.S.C. § 1447(b) (2000). Concurrent with this Memorandum, Respondents are filing a Motion to Remand Proceedings to the Department of Homeland Security. For the reasons explained below, Respondents respectfully request that the Court remand this matter to the Department of Homeland Security's United States Citizenship and Immigration Services ("CIS") for it to continue to investigate Muntasser's eligibility for United States citizenship. As explained infra, CIS has legitimate concerns regarding Muntasser's eligibility, requiring further investigation. This Court, which is not an investigative body, should remand these proceedings to CIS, which is best suited to investigate Muntasser's eligibility for naturalization.

## **INTRODUCTION**

The material facts from Muntasser's Petition and Memorandum may be summarized as follows. Emadeddin Muntasser, a lawful permanent resident of the United States, and a native and citizen of Libya, filed an application for naturalization (Form N-400) in October 2002. In his application, Muntasser indicated, <u>inter alia</u>, that he took twenty trips and spent 495 days outside of the United States during the previous five years. He did not disclose that he had traveled to Afghanistan in the mid-1990's. An Officer of CIS interviewed Muntasser, under oath, on or about November 6, 2003, in conjunction with CIS's examination of his naturalization application. The day before Muntasser's November 6, 2003 CIS interview, Muntasser submitted new information to correct his written naturalization application. At that time, he provided a list of additional trips outside the United States since he became a lawful permanent resident, which were omitted on his written application, and a list of organizations of which he had been or was a member, even though he had indicated on his written application that he had never been a member of or associated with any organization. Among the new disclosures was that Muntasser had traveled to Afghanistan in the mid-1990's, and was a member of two organizations, CARE International from 1993-96 and the Alkifah Refugee Center from 1991-93. <u>Id.</u> As of the date of this pleading, CIS has not yet made a determination on Muntasser's naturalization

application pending its investigation of this late-disclosed information. Muntasser's November 6, 2003 CIS interview triggered 8 U.S.C. § 1447(b)'s 120-day clock even though Muntasser did not reveal his travel to Afghanistan in the mid-1990's and organization affiliation as required on his written naturalization application and instead revealed it the day before the interview.

On March 7, 2004, Muntasser returned to the United States after approximately four months abroad. The Immigration and Naturalization Service ("INS")[1] deferred Muntasser's inspection until April 6, 2004, at which time he was interviewed, under oath, by an INS officer. At the interview, Muntasser stated, <u>inter alia</u>, that he had traveled to Afghanistan in the mid-1990's to perform humanitarian work on behalf of CARE International of Boston-Brighton, a charity of which he was once President. Muntasser also stated that he was outside the United States for approximately eight to nine months during 2003, and over five months during 2002. He stated that his wife and children were in Tripoli, and his two eldest children, who were then seven and eight years old, attended school in Tripoli. Muntasser stated that he had been interviewed by the Federal Bureau of Investigations ("FBI") in early 2003.

---

[1] On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice and its immigration and naturalization functions were transferred to the Department of Homeland Security ("DHS"), pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.

Additional material facts are contained in the Declaration of Alton D. Saucier, a CIS Boston District Adjudications Officer assigned to complete the examination of Muntasser's naturalization application.  See Exhibit A.  Officer Saucier confirms that Muntasser did not disclose his travel to Afghanistan on behalf of CARE International in the mid-1990's or his membership in CARE International and the Alkifah Refugee Center until the day before his November 6, 2003 naturalization interview.  Id. at ¶¶ 9-10.

After Muntasser's interview, CIS obtained information from, inter alia, the Joint Terrorism Task Force ("JTTF"), leading it to conclude that further investigation of Muntasser is warranted.  Id.  CIS has learned that Muntasser is currently the subject of a pending federal criminal investigation regarding statements he made to the FBI in voluntary interviews with Joint Terrorism Task Force ("JTTF") agents which are inconsistent with certain statements he has made to DHS.  Id. at ¶ 17.  Officer Saucier states that "[t]o the extent that investigation reveals that Mr. Muntasser has made false statements to the FBI JTTF, that fact would bear on his moral character and his eligibility to naturalize as a United States citizen."  Id.  In addition, as of the date of this pleading, the FBI background "name check" that an alien must pass before his naturalization application may be approved is still pending.  Id. at ¶ 13.  Thus, essential predicates to Muntasser's eligibility for naturalization remain subject to investigation by the agency.

## STATUTORY BACKGROUND

**A.     Judicial Naturalization Prior to 1990**

Until 1990, United States District Courts sat as naturalization courts and were vested with exclusive jurisdiction to pass upon the qualifications of an applicant for naturalization and to naturalize aliens as citizens of the United States. See 8 U.S.C. §§ 1101(a)(24), 1421(a) (repealed 1990); see also Shomberg v. United States, 348 U.S. 540 (1955); United States v. Waskowski, 158 F.2d 962 (7th Cir. 1947).  Under this two-tiered system, the applicant submitted a preliminary naturalization application to the INS, which conducted a preliminary investigation of the applicant and made a non-binding recommendation to the district court as to whether the application should be approved or denied.  See 8 U.S.C. § 1445(b), 1446(b), (d) (repealed 1990); 8 C.F.R. §§ 334.11, 335.11-.13 (1990).  The actual decision to approve or deny the naturalization application was vested solely with the federal court, which took jurisdiction based on a petition filed by the applicant and administered the oath of allegiance.  8 U.S.C. §§ 1421, 1445, 1447, 1448 (repealed 1990).

**B.     Enactment of 1990 Amendments Transferring Naturalization From Courts to Attorney General**

In 1990, Congress enacted the Immigration Act of 1990, Pub. L. No. 101-649, § 401, 104 Stat. 4978 ("IMMACT"), which overhauled the naturalization

process in favor of a one-tier administrative procedure.  The central purpose for this shift to an administrative naturalization process from a judicial one was to reduce the waiting time for eligible naturalization applicants, who encountered unwarranted delays because of the two-tiered process and the backlogs in many federal courts.  See 135 Cong. Rec. H4539-02 (July 31, 1989)  ("the current system is one which requires a two-step process, one within the Immigration and Naturalization Service, and second, in the U.S. district court, and this legislation is directed to change that process and to create a one-step option which will allow citizenship to be more expeditiously provided to those who qualify") (statement of Rep. Morrison), 1989 WL 182156, *H4542; H. R. Rep. No. 101-187, at 8 (1989) (statement of  Rep. Morrison); see also H.R. Rep. No. 102-287, at 4, reprinted in 1991 U.S.C.C.A.N. 1362, 1363 ( "The 1990 Act was intended to streamline the citizenship process, which had been plagued by extensive delays . . . .  The causes of the delays were twofold:  First, duplicative paperwork resulting from overlapping administrative responsibilities between the courts and INS; and second, the occasional inability of some courts to hold timely oath-taking ceremonies due to crowded dockets.").

In IMMACT § 401, Congress transferred the power to naturalize from the district courts and vested the Attorney General – now the Secretary of DHS[2] – with "sole authority to naturalize persons as citizens of the United States."  See 8 U.S.C. § 1421(a) (2000).  Under the administrative naturalization process, CIS is responsible for adjudicating naturalization applications, including rendering a preliminary investigation of the applicant, conducting an examination, and making a determination as to whether to grant or deny the application.  See 8 U.S.C. § 1446(a), (b), (c).  If CIS initially denies a naturalization application, the applicant may seek administrative review of the denial by requesting a hearing before a supervisory immigration officer.  8 U.S.C. § 1447(a); 8 C.F.R. § 336.2(b) (2004).

While vesting the primary naturalization authority with the Secretary of DHS, however, Congress did not completely eliminate the district court's jurisdiction over the naturalization application process.  For example, the district courts may still administer the citizenship oath of allegiance.  8 U.S.C. § 1421(b)(1).  The district courts also have jurisdiction to review de novo applications for naturalization denied as a result of the administrative review

---

[2] The transfer of the former INS's naturalization functions to the newly-created DHS, see supra note 1, included the transfer of the authority to naturalize from the Attorney General to the Secretary of DHS.  See Homeland Security Act of 2002, Pub. L. No.107-296, § 1512(d), 116 Stat. 2135, 2310.

procedure under § 1447(a).  8 U.S.C. § 1421(c).  Finally, under 8 U.S.C. § 1447(b), the provision at issue here, the applicant may apply to the appropriate district court for a hearing on the naturalization application if the INS does not grant or deny the application within 120 days after the naturalization interview.  In such case, the court "may either determine the matter or remand the matter, with appropriate instructions, to [CIS] to determine the matter."  8 U.S.C. § 1447(b).

## DISCUSSION

### This Court Should Exercise its Discretion to Remand Muntasser's Naturalization Proceedings to the Department of Homeland Security.

CIS has been diligent in processing Muntasser's naturalization application.  Any delay is a result of the agency's continuing background investigation, which has been hampered by Muntasser's belated revelations to the agency on the eve of his naturalization interview.  That investigation has revealed, <u>inter alia</u>, a pending federal criminal investigation involving Muntasser's veracity in prior filings and statements to the government, including the JTTF.  Thus, the Court should remand this matter to CIS for it to continue its background investigation and to adjudicate promptly Muntasser's application once the criminal investigation has been resolved.  Such criminal investigation clearly bears on Muntasser's moral character and eligibility for naturalization, and thus neither CIS nor this Court may adjudicate Muntasser's naturalization application until the investigation has been

resolved. Because the Executive Branch is best suited to investigate Muntasser's naturalization eligibility, the Court should remand this matter to CIS.

To become a United States citizen, an alien must strictly comply with all the prerequisites to the acquisition of citizenship imposed by Congress. Federenko v. INS, 449 U.S. 490, 506 (1981). "An alien who seeks political rights as a member of this nation can rightfully obtain them only upon the terms and conditions specified by Congress . . . ." United States v. Ginsberg, 242 U.S. 472, 474 (1917). Morever, it is "universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect[,]" and any "doubts 'should be resolved in favor of the United States and against the claimant.'" Berenyi v. INS, 385 U.S. 630, 637 (1967) (quoting United States v. Macintosh, 283 U.S. 605, 626 (1931), overruled on other grounds, Girourad v. United States, 328 U.S. 61, 69 (1946)). "Congress alone has the constitutional authority to prescribe rules for naturalization, and the Court's task is to assure compliance with the particular prerequisites to the acquisition of citizenship by naturalization legislated to safeguard the integrity of this 'priceless treasure.'" Federenko, 449 U.S. at 507 (quoting Johnson v. Eisentrager, 339 U.S. 763, 791 (1950) (Black, J., dissenting)).

The statutory naturalization scheme since 1990 evidences two strong preferences on the part of Congress. First, as explained supra, the 1990 amendments were primarily designed to relieve eligible applicants of undue delays

in the adjudication of their naturalization applications.  <u>See also</u>  H.R. Rep. No. 101-187, at 8 (July 27, 1989) ("By vesting authority for naturalization with the Attorney General, the applicant will be relieved of onerous paperwork burdens, confusing divisions of responsibilities between the Courts and the Department of Justice, and unduly lengthy processing times to achieve their goal of acquiring U.S. citizenship.").  Second, by providing for administrative decisions, administrative appeals, and a limited role for the courts, Congress evidenced its strong preference for naturalization applicants to exhaust their administrative remedies before seeking judicial review of their applications.  <u>See</u> 8 U.S.C. §§ 1421(c) & (d), 1447(a).

      Section 1447(b)'s provision allowing an alien to request a hearing before a district court where CIS does not make a determination on the alien's naturalization application within 120 days after interviewing the alien is a narrow exception to the exhaustion requirement articulated by Congress.  The exception is not mandatory, however, because when an alien makes such a request, the district court is not required to assert jurisdiction to determine the naturalization application itself.  Rather, the statute affords discretion to the district court whether to decide the case or to remand it back to CIS with appropriate instructions.  <u>See</u> 8 U.S.C. § 1447(b) ("Such Court. . . **may** either determine the

matter or remand the matter, with appropriate instructions, to the [DHS] to determine the matter.").

In light of Congress' goals in creating an administrative naturalization process, § 1447(b) is reasonably interpreted as providing the court and an alien an alternative should CIS unduly delay adjudication of his application. Given Congress' preference for exhaustion of administrative remedies, however, where the delay is legitimately based on the agency's ongoing investigation of the applicant's eligibility for naturalization, the court should exercise its discretion to remand the matter to CIS for it to continue its investigation.

Here, CIS has not yet made a determination on Muntasser's naturalization application, and more than 120 days have expired since Muntasser's initial interview by a CIS adjudications officer. Hence, pursuant to § 1447(b), Muntasser has the option to seek this Court's review of his naturalization application. It is also clear, however, that CIS is continuing its investigation of Muntasser's application and is unable to approve it at this time because, <u>inter alia</u>, of serious questions that have come to light due to his latent disclosures and upon CIS's consultation with the JTTF regarding a pending federal criminal investigation with respect to statements Muntasser made to the FBI in voluntary interviews with JTTF agents which are inconsistent with certain statements Mr. Muntasser has made to DHS. Ex. A at ¶ 17.

The federal criminal investigation is material to Muntasser's naturalization application as Congress has directed that the government conduct a thorough background investigation of each applicant to confirm that the applicant is eligible for naturalization.  8 U.S.C. § 1446(a); see also 8 C.F.R. § 335.1 (2004).  To be eligible for naturalization, an applicant must establish that he is a person of good moral character.  8 U.S.C. § 1427(d).  An alien cannot establish good moral character if, inter alia, he has been convicted of certain criminal offenses, including crimes involving moral turpitude.  See 8 U.S.C. § 1101(f).  Thus, CIS must continue the adjudication of Muntasser's application until the pending federal criminal investigation is completed, as any false statements Muntasser has made to the JTTF or any resultant conviction would clearly bear on his moral character and thus on his eligibility for naturalization.

Moreover, adjudication of Muntasser's naturalization application is delayed, inter alia, because CIS has not yet received clearance from the FBI on Muntasser's "name" check, which can take additional time when there is a "hit" or "match" necessitating a response and ultimate resolution from the FBI.  Ex. A. at ¶¶ 13, 17.  Such delay is also legitimate because Congress has specifically enacted legislation precluding the agency from using funds to adjudicate an application for naturalization unless the agency "has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been

completed." See 8 U.S.C. § 1446 note (2000) (Criminal Background Checks). Thus, the pendency of an ongoing federal criminal investigation and the lack of clearance from the FBI on Muntasser's background name check are clearly relevant to his eligibility for naturalization and clearly justify any delay in this case. Berenyi, 385 U.S. at 638 ("[t]he Government is entitled to know of any facts that may bear on an applicant's statutory eligibility for citizenship, so that it may pursue leads and make further investigation if doubts are raised").

In addition, 8 U.S.C. § 1447(b)'s 120-day adjudication period only comes into play once a naturalization applicant has been interviewed by CIS. Here, however, Muntasser did not divulge facts regarding his past including travel to Afghanistan, a country then torn by sectarian war, on behalf of CARE International and his association with CARE International and the Alkifah Refugee Center – clearly material information – until the day before the scheduled date of his interview. Ex. A at ¶¶ 9-10. Had Muntasser disclosed this information on his written application as required, CIS could have delayed his interview until the questions raised by the disclosures were resolved. Thus, CIS's continued investigation would not have been subject to § 1447(b)'s 120-day clock had Muntasser not delayed submission of this information. This Court should not penalize CIS for Muntasser's last-minute disclosure by not permitting CIS to adjudicate Muntasser's naturalization application in the first instance.

By actively working with the FBI and the JTTF regarding Muntasser's application, CIS is complying with its statutory duties and fulfilling Congress's strong preference for an initial administrative adjudication of an alien's naturalization application. Questions were raised immediately prior to Muntasser's initial interview, and concerns that were generated from information received in response to those questions, go to the heart of Muntasser's truthfulness and eligibility for naturalization. CIS would be derelict in its duty to confer naturalization only where the alien is deserving and only where statutory criteria are clearly satisfied, if it ignored these questions and failed to seek further information pertinent to Muntasser's eligibility. See Berenyi, 385 U.S. at 637 (emphasizing that the government has a "strong and legitimate interest in ensuring that only qualified persons are granted citizenship").

While this Court has statutory authority to hold a hearing on Muntasser's application, Respondents' motion, in essence, requests that the Court exercise its discretion and defer to CIS in order to allow it to complete its background investigation and to let the administrative process run its course. Doing so will give the Executive Branch an opportunity to use its expertise to investigate fully the concerns that have arisen about Muntasser's background and allow CIS to use its expertise in adjudicating naturalization applications, particularly as it seeks additional information from the FBI regarding Muntasser's "name check" and the

ongoing federal criminal investigation regarding the veracity of Muntasser's prior statements to government officials.

Finally, deferring to the administrative process and CIS's investigation will cause no prejudice to Muntasser. If, at the conclusion of its investigation, CIS grants Muntasser's application, there will be no need for court involvement. If the application is denied, Muntasser may seek administrative review of that denial. See 8 U.S.C. § 1447(a). That review will provide him with a hearing where he will have opportunity to subpoena witnesses, submit documentary evidence, and cross examine any witnesses called on behalf of the government. See 8 U.S.C. § 1447(d). Thereafter, if the denial of his application is affirmed, Muntasser has a statutory right to seek review of that denial in this Court. See 8 U.S.C. § 1421(c). Moreover, nothing in the applicable statutes suggests that § 1447(b) would not remain available to Muntasser to again seek relief in this Court should circumstances change such that CIS is no longer justified in delaying adjudication of his naturalization application.

## CONCLUSION

For the reasons stated above, Respondents respectfully request that the Court grant Respondents' motion to remand this matter to CIS for its adjudication of Muntasser's application for naturalization.

Respectfully submitted,

| | |
|---|---|
| MICHAEL J. SULLIVAN<br>United States Attorney | MICHAEL P. LINDEMANN<br>Assistant Director |
| /s/ Anton P. Giedt<br>ANTON GIEDT<br>Assistant U.S. Attorney<br>1 Courthouse Way<br>John Joseph Moakley Courthouse<br>Suite 9200<br>Boston, MA 02210<br>617-748-3309 (Voice)<br>617-748-3967 (Fax)<br>anton.giedt@usdoj.gov | /s/ Linda S. Wernery (By: APG)<br>LINDA S. WERNERY<br>Senior Litigation Counsel<br>Office of Immigration Litigation<br>Civil Division, U.S. Dep't of Justice<br>P.O. 878, Ben Franklin Station<br>Washington, D.C. 20044<br>202- 616-4865 (Voice) |
| Dated: August 9, 2004 | Counsel for Respondents |

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2004, one copy of Respondents' Motion to Remand Proceedings to the Department of Homeland, with proposed Order and accompanying Memorandum was served on Petitioner's counsel by first class mail addressed to:

>Jeremiah Friedman
>Kaplan, O'Sullivan & Friedman, LLP
>10 Winthrop Square, 3rd Floor
>Boston, MA 02110

>/s/ Anton P. Giedt
>ANTON P. GIEDT
>Assistant U.S. Attorney