UNITED STATES DISTRICT COURT
FOR THE FIRST DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Emadeddin MUNTASSER<br><br>Petitioner<br><br>Thomas Ridge, Secretary of<br>Department of Homeland Security, ET. Al.<br><br>Respondents | Civil Action No.:<br>04-CV-11259 RWZ |

**PETITIONER'S MEMORANDUM IN
OPPOSITION TO REMAND**

Petitioner opposes the motion to remand. Petitioner believes that there will be no useful purpose in remanding this matter back to the Department of Homeland Security. This Court has the experience and expertise to determine the legal and factual basis to naturalize Mr. Muntasser. The purpose to the statute removing this matter to this court is to correct a pattern of needless delay and endless investigations.

I.   Facts

Emadeddin Muntasser has been a permanent resident since September 1992. He originally came to the U.S. as a student in 1981 and attended Worcester Polytech Institute in Worcester, MA. He graduated with honors in 1986. After completing his degree as an engineer he ultimately secured permanent resident status through employer sponsorship. But, Mr. Muntasser's ties to this country have come at a price. His father was accused of being an "American Sympathizer" and was subjected to investigation and a number of interrogations by the Qadhafi regime in Libya

Mr. Muntasser is a businessman. He owns Logan Furniture Company, a retailer of furniture with four locations in Greater Boston. He employs numerous people, he owns real estate and resides in the U.S. when not traveling on business.

Mr. Muntasser is a Libyan. In the 1980's, the regime of Mu'ammar Qadhafi seized properties and lands owned by the Muntasser family. Recently, Libyan law has liberalized to the extent that citizens can petition the government for return of land which was improperly taken. Mr. Muntasser has been traveling to Libya to assist his family in regaining possession of the property.

During Mr. Muntasser's college days, and up to the mid-1990's, he was involved with a variety of Muslim oriented organizations. He served as president of Care International from approximately 1993 to approximately 1996. It was at this time that he traveled to Afghanistan to investigate the refugee crisis caused by the civil war, well before the country was taken over by the Taliban. Mr. Muntasser resigned from Care International in 1996.

Mr. Muntasser voluntarily spoke with agents of the FBI when requested to do so in early 2003 concerning his activities.

Mr. Muntasser filed for naturalization on or about October 2002. At that time, a different attorney represented Mr. Muntasser. He recollects that prior counsel advised him that he only had to list current information on the N-400 application, and information more than 5 years old was not needed. Current counsel disagreed. As soon as was practicable, Mr. Muntasser amended his application. While the application was amended 1 day prior to the interview, there is no prohibition to making changes to the form at any time before the interview. In fact, one of the purposes of the interview is to allow petitioners to amend their applications.

Mr. Muntasser submitted his fingerprints to Immigration Officials on or about December 2002, well before the interview. Agent Saucier informed Mr. Muntasser that his prints were sent

to the FBI on February 15, 2003 four months after he filed the N-400 petition. Agent Saucier informed Mr. Muntasser that his prints were "loaded" on September 10, 2003 but that they had not "cleared". Mr. Saucier further informed Mr. Muntasser that his fingerprints would "expire" on March 28, 2004, and if his case was unresolved by then, he would be notified to submit a new set of fingerprints. Mr. Muntasser has never been notified to submit new fingerprints in the 5 months since the first set he gave to Immigration expired. The Government's dilatoriness in processing Mr. Muntasser's prints, which he gave over 1½ years ago, is not a reason to remand but rather a strong reason for this Court to retain jurisdiction and make a prompt decision. . . Mr. Muntasser must wait until CIS issues a notice to be re-fingerprinted further increasing the likelihood of delay caused by the Government's inaction. It is approaching 5 months since the last set of prints expired.

Mr. Muntasser's application had been pending for over 1 year when he was finally called for an interview. His fingerprints had already been at the FBI for 9 months. Mr. Muntasser had previously spoken to FBI agents concerning his activities. He had a reasonable expectation that preliminary processing would have been completed. [1]

II. <u>Argument</u>

**THE RESPONDENT'S MOTION TO REMAND DOES NOT ARTICULATE A SINGLE COMPELLING ARGUMENT FOR A REMAND**

A. <u>Mr. Muntasser's Failure to List His Memberships in His Application for Naturalization Did Not Cause the Delay in Processing his Case</u>

The Government complains that Mr. Muntasser disclosed information only one day prior to the naturalization interview and that the delay in processing his application is therefore his fault. At the naturalization interview, Mr. Saucier had Mr. Muntasser's complete immigration

---

[1] The regulations at 8 CFR 335.2(b) states that applicants appear for the initial interview <u>only</u> after a "definitive response" has been received from the F.B.I. This "response" states simply whether a criminal or administrative record does or does not exist.

3

file, including his application for permanent residence (Form I-485), which was filed in 1992. The application for permanent residence asked for a list of all organizations and affiliations. On information and belief Mr. Muntasser listed the following affiliations on Form I-485: Islamic Society of Greater Worcester, Foreign Student Organization – WPI, Muslim Student Association – WPI, Alkifah Refugee Center of Boston, Graduate Student Organization – WPI. (See attached copy of I-485). He did not list Care International on his original application for permanent residence because he became affiliated with that group later after his permanent residence was granted. Thus, with the exception of Care International, all of the information that the Government now complains it received "late" (i.e., one day before the interview) was in fact already in the file from the time the original application was submitted. Information of this nature is also transmitted to the CIS from the FBI via the fingerprint response system. 8 CFR 335.2(b). Mr. Saucier did not ask one question concerning Mr. Muntasser's affiliations or travel, other than whether any trip exceeded 6 months in duration. Mr. Saucier had Mr. Muntasser's entire immigration file at the time of the interview, so he had access to all of the information regarding Mr. Muntasser's affiliations and travel, and except for the Care International affiliation, he had had that information for <u>months</u> before the interview.

The November 6, 2003 interview triggers the countdown of 120 days until 8 USC §1447(b) becomes effective. The earliest Muntasser could have filed his action was March 5, 2004. However, Mr. Muntasser did not file this action for another 95 days, ample time for the CIS to complete its investigation even if the filing of an amendment 1 day before the interview somehow hindered CIS in its investigation

On April 6, 2004, Mr. Muntasser appeared for an interview called a deferred inspection. The purpose of the interview was to determine if Muntasser was inadmissible to the United States after his recent travel to Libya. Mr. Muntasser went to the DHS/CBP (Customs and

4

Border Protection) office at the JFK Building with counsel. The officer informed Muntasser that attorneys are not permitted to participate in deferred inspections, and counsel was denied admission to the interrogation, even as an observer. Although CBP routinely exclude attorneys from deferred inspections, regulations, at 8 CFR 1292.5(b) provide that an attorney may be present when the applicant for admission has become the focus of a criminal investigation and is in custody. The Government Memorandum does indicate that Mr. Muntasser is subject to a criminal investigation, so it would seem that any information gleamed at the deferred inspection was pursuant to a denial of right to counsel and was also a violation of their own regulations.

On August 5, 2004, Mr. Muntasser returned to the U.S. again after a brief trip abroad. Once more, he was placed in deferred inspection, with a date to report on September 2, 2004. Customs and Border Protection has not signified why Mr. Muntasser is being interrogated yet again.

CIS has not been diligent in processing Muntasser's naturalization. Over 1 year went by from the filing of the application to the interview. Although Muntasser amended the N-400 application just prior to the interview, the examiner, Mr. Saucier did not ask any questions as to why it was amended a day before the interview, nor did he ask any questions concerning the substance of the amendments. In fact, Mr. Saucier seemed more preoccupied with the fact that the fingerprints were not timely processed by CIS. Mr. Saucier did not request any additional documentation concerning Mr. Muntasser's travel or affiliations. Over 200 days passed from the date of interview to filing for this action. During this time, Mr. Muntasser was met with silence from the agency despite repeated calls to CIS from counsel.

> B. <u>The Fact that Mr. Muntasser is The Subject of an Investigation is Not Enough, Standing Alone to Bar Him From Eligibility for Naturalization</u>

The Government's assertion that Muntasser is the subject of a criminal investigation, for making false statements, comes late in the day. While a <u>conviction</u> for false statements may

5

reflect on the applicant's good moral character requirement for naturalization, no charge has been brought in the over 2 ½ years this naturalization case has been pending with the Government. It is unclear whether the criminal investigation the Government asserts is in process began in early 2003, when the FBI interviewed Mr. Muntasser, or since June 8, 2004, when the instant action was filed. At no time did CIS inform counsel that the naturalization petition was being delayed due to a criminal investigation. At the close of the deferred inspection in April 2004, Mr. Muntasser was "admitted" to the U.S. the officer stated that since the Government was satisfied as to Mr. Muntasser's residency, he implied that his naturalization petition would no longer be held up. At no time there was an indication of an ongoing criminal investigation.

### C. The Agency is No More Qualified To Access Mr. Muntasser's Eligibility for Naturalization Than is This Court

The purpose of 8 USC §1447(b) is to grant the District Court jurisdiction over naturalization claims that may never be adjudicated by the Executive Branch.

Although the Government claims that the Executive Branch is best suited to investigate Muntasser's naturalization eligibility (CIS memo at 8-9). It does not say why. Indeed, as the CIS itself notes, " the central purpose for this shift to an administrative naturalization process from a judicial one was to reduce the waiting time for eligible naturalization applicants, who encountered unwarranted delays" (CIS memo at 6). In requesting remand, the Government defeats this central purpose of the shift to an administrative process, and defeats the purpose of allowing judicial review of dilatory Executive action

There is nothing inherent to the Department of Homeland Security which renders it more capable than this court is to assess Mr. Muntasser's eligibility for U.S. citizenship. As the CIS itself notes in its memo, this court has the authority to hold a hearing in connection with Mr. Muntasser's application. At that hearing before this Court, the Government will have ample

opportunity to present its case. The CIS can delay indefinitely while waiting for a resolution of this or that investigation. A prompt hearing on Mr. Muntasser's eligibility will allow for a timely resolution of this case.

The Government, for reasons which it does not articulate, refers to the Court taking jurisdiction over this case as "penaliz[ing]" CIS. (CIS memo at 13). There is no indication in the memo of why this Court exercising its statutory authority under 8 USC §1447(b) to take jurisdiction over a case which the CIS is unwilling or unable to process in a timely fashion in any sense constitutes a penalty. The agency has demonstrated that it does not have either the time or the resources to adjudicate this case within the timeline which Congress set for it. Under these circumstances, it is entirely appropriate for this Court to "take up the slack" and to ensure that the application is adjudicated within a reasonable time frame.

                                                              Respectfully submitted  
                                                               Emadeddin Muntasser  
                                                               by his Attorney,

_____                 _____  
Date                                                   Jeremiah Friedman  
                                                               Kaplan, O'Sullivan & Friedman, LLP  
                                                              Ten Winthrop Square, 3rd Floor  
                                                              Boston, MA 02110  
                                                              BBO #548031  
                                                              (617) 482-4500

## *CERTIFICATE OF SERVICE*

I, Jeremiah Friedman, certify that I have served a copy of Petitioner's Memorandum in opposition to Remand on Respondents counsel by first class mail addressed to:

Anton Giedt
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA  02210

Linda Wernery
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044

Fred McGrath
District Counsel
Department of Homeland Security
JFK Federal Building, Room 425
Boston, MA  02203

_____
Date
**JF\MuntEn1.md**

_____
Jeremiah Friedman

**U.S. Department of Justice**
Immigration and Naturalization Service (INS)

**Application for Permanent Residence**

OMB # 1115-0053

**DO NOT WRITE IN THIS BLOCK**

Case ID#

A#

G-28 or Volag#

Action Stamp

Fee Stamp

Section of Law
- ☐ Sec. 209(b), INA
- ☐ Sec. 214(d), INA
- ☐ Sec. 13, Act of 9/11/57
- ☐ Sec. 245, INA
- ☐ Sec. 249, INA

Country Chargeable _____

Eligibility Under Sec. 245
- ☐ Approved Visa Petition
- ☐ Dependent of Principal Alien
- ☐ Special Immigrant
- ☐ Other _____

Preference _____

### A. Reason for this application

I am applying for lawful permanent residence for the following reason: (check the box that applies)

1. ☒ An immigrant visa number is immediately available to me because
   - ☒ A visa petition has already been approved for me (approval notice is attached)
   - ☐ A visa petition is being filed with this application
2. ☐ I entered as the fiance(e) of a U.S. citizen and married within 90 days (approval notice and marriage certificate are attached)
3. ☐ I am an asylee eligible for adjustment
4. ☐ Other: _____

### B. Information about you

1. Name (Family name in CAPS) (First) (Middle)
   MUNTASSER, Emadeddin Zahri

2. Address (Number and Street) (Apartment Number)
   2 Medell Court, #105
   (Town or City) (State/Country) (ZIP/Postal Code)
   Woburn, MA 01801

3. Place of Birth (Town or City) (State/Country)
   Tripoli, Libya

4. Date of Birth (Mo/Day/Yr): 10 DEC 1964
5. Sex: ☒ Male  ☐ Female
6. Marital Status: ☐ Married  ☒ Single  ☐ Widowed  ☐ Divorced

7. Social Security Number: 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
8. Alien Registration Number (if any): N/A

9. Country of Citizenship: Libya

10. Have you ever applied for permanent resident status in the U.S.?
    ☐ Yes  ☒ No
    (If Yes, give the date and place of filing and final disposition)

11. On what date did you last enter the U.S.? Aug 3, 1992
12. Where did you last enter the U.S.? (City and State) Boston
13. What means of travel did you use? (Plane, car, etc.) Plane
14. Were you inspected by a U.S. immigration officer? ☒ Yes  ☐ No
15. In what status did you last enter the U.S.? (Visitor, student, exchange alien, crewman, temporary worker, without inspection, etc.) visitor B-2 adv. parole
16. Give your name EXACTLY as it appears on your Arrival/Departure Record (Form I-94). MUNTASSER, EMADEDDIN
17. Arrival/Departure Record (I-94) Number: GE N 0 0 4 0 3 2 6 2
18. Visa Number: 00891E
19. At what Consulate was your nonimmigrant visa issued? Bern, Switzerland
    Date (Mo/Day/Yr): 10 SEP 1991

20. Have you ever been married before?  ☐ Yes  ☒ No
    If Yes, (Names of prior husbands/wives) _____ (Country of citizenship) _____ (Date marriage ended) _____

21. Has your husband/wife ever been married before?  ☐ Yes  ☒ No
    If Yes, (Names of prior husbands/wives) _____ (Country of citizenship) _____ (Date marriage ended) _____

| INITIAL RECEIPT | RESUBMITTED | RELOCATED | | COMPLETED | | |
|---|---|---|---|---|---|---|
| | | Rec'd | Sent | Approved | Denied | Returned |
| | | | | | | |

22. List your present husband/wife, all of your sons and daughters, and all of your brothers and sisters. If you have none, write "None".

| Name | Relationship | Place of Birth | Date of Birth | Country of Residence | Applying With You? |
|---|---|---|---|---|---|
| Burhaneddin Muntasser | Brother | Libya | 30 AUG 1965 | USA Libya (USA) | ☐ Yes ☒ No |
| Iubna Muntasser | Sister | Libya | 15 APR 1969 | Libya | ☐ Yes ☒ No |
| Alaeddin Muntasser | Brother | Libya | 26 NOV 1973 | USA Libya (USA) | ☐ Yes ☒ No |
| Hussameddin Muntasser | Brother | Libya | 29 JAN 1921 | Libya | ☐ Yes ☒ No |

23. List your present and past membership in or affiliation with every organization, association, fund, foundation, party, club, society or similar group in the United States or in any other country or place, and your foreign military service. (If this does not apply write "N/A")

  a. Islamic Society of Greater Worcester, Worcester, MA   19 84 to 19 92
  b. Foreign Student Society, Worcester Polytechnic Institute, Worcester, MA   19 85 to 19 89
  c. Muslim Student Association, Worcester Polytechnic Institute, Worcester, MA   19 88 to 19 92
  d. Al-Kifah Refugee Center, Boston Chapter, Boston, MA   19 91 to 19 92
  e. Graduate Student Organization, Worcester Polytechnic Institute, Worcester, MA   19 89 to 19 92
  f. _____ 19 ___ to 19 ___
  g. _____ 19 ___ to 19 ___

24. Have you ever, in or outside the United States:

  a) knowingly committed any crime for which you have not been arrested?   ☐ Yes ☒ No
  b) been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic regulations?   ☒ Yes ☐ No
  c) been the beneficiary of a pardon, amnesty, rehabilitation decree, other act of clemency or similar action?   ☐ Yes ☒ No

If you answered Yes to (a), (b), or (c) give the following information about each incident:

| Date | Place (City) (State/Country) | Nature of offense | Outcome of case, if any |
|---|---|---|---|
| 1) 21 AUG 1985 | Worcester, MA, USA | Moving violation - speeding | Paid fine |
| 2) 12 JAN 1986 | Worcester, MA, USA | Moving violation | Paid fine |
| 3) 29 NOV 1989 | Worcester, MA, USA | Moving violation | Paid fine |
| 4) 6 JUN 1991 | Boston, MA, USA | Moving violation | Paid fine |
| 5) 24Apr91 | Worcester, MA, USA | Moving violation | Contested & cleared |
| 6) 12Jun91 | Framingham, MA, USA | Moving violation | Contested & cleared |

25. Have you ever received public assistance from any source, including the U.S. Government or any state, county, city or municipality?

  ☐ Yes ☒ No   (If Yes, explain, including the name(s) and Social Security number(s) you used.)

26. Do any of the following relate to you? (Answer Yes or No to each)

A. Have you been treated for a mental disorder, drug addiction, or alcoholism?   ☐ Yes ☒ No
B. Have you engaged in, or do you intend to engage in, any commercialized sexual activity?   ☐ Yes ☒ No
C. Are you or have you at any time been an anarchist, or a member of or affiliated with any Communist or other totalitarian party, including any subdivision or affiliate?   ☐ Yes ☒ No
D. Have you advocated or taught, by personal utterance, by written or printed matter, or through affiliation with an organization
  1) opposition to organized government   ☐ Yes ☒ No
  2) the overthrow of government by force or violence   ☐ Yes ☒ No
  3) the assaulting or killing of government officials because of their official character   ☐ Yes ☒ No
  4) the unlawful destruction of property   ☐ Yes ☒ No
  5) sabotage   ☐ Yes ☒ No
  6) the doctrines of world communism, or the establishment of a totalitarian dictatorship in the United States?   ☐ Yes ☒ No
E. Have you engaged or do you intend to engage in prejudicial activities or unlawful activities of a subversive nature?   ☐ Yes ☒ No
F. During the period beginning March 23, 1933, and ending May 8, 1945, did you order, incite, assist, or otherwise participate in persecuting any person because of race, religion, national origin, or political opinion, under the direction of, or in association with any of the following:
  1) the Nazi government in Germany   ☐ Yes ☒ No
  2) any government in any area occupied by the military forces of the Nazi government in Germany   ☐ Yes ☒ No
  3) any government established with the assistance or cooperation of the Nazi government of Germany   ☐ Yes ☒ No
  4) any government that was an ally of the Nazi government of Germany   ☐ Yes ☒ No
G. Have you been convicted of a violation of any law or regulation relating to narcotic drugs or marijuana, or have you been an illicit trafficker in narcotic drugs or marijuana?   ☐ Yes ☒ No

| | | Yes | No |
|---|---|---|---|
| | Have you been involved in assisting any other aliens to enter the United States in violation of the law? | ☐ Yes | XXX No |
| H | Have you applied for exemption or discharge from training or service in the Armed Forces of the United States on the ground of alienage and have you been relieved or discharged from that training or service? | ☐ Yes | ☒ No |
| I | Are you mentally retarded, insane, or have you suffered one or more attacks of insanity? | ☐ Yes | ☒ No |
| J | | ☐ Yes | ☒ No |
| K | Are you afflicted with psychopathic personality, sexual deviation, mental defect, narcotic drug addiction, chronic alcoholism or any dangerous contagious disease? | ☐ Yes | ☒ No |
| L | Do you have a physical defect, disease, or disability affecting your ability to earn a living? | ☐ Yes | ☒ No |
| M | Are you a pauper, professional beggar, or vagrant? | ☐ Yes | ☒ No |
| N | Are you likely to become a public charge? | ☐ Yes | ☒ No |
| O | Are you a polygamist or do you advocate polygamy? | ☐ Yes | ☒ No |
| P | Have you been excluded from the United States within the past year, or have you at any time been deported from the United States, or have you at any time been removed from the United States at government expense? | ☐ Yes | ☒ No |
| Q | Have you procured or have you attempted to procure a visa by fraud or misrepresentation? | ☐ Yes | ☒ No |
| R | Are you a former exchange visitor who is subject to, but has not complied with, the two-year foreign residence requirement? | ☐ Yes | ☒ No |
| S | Are you a medical graduate coming principally to work as a member of the medical profession, without passing Parts I and II of the National Board of Medical Examiners Examination (or an equivalent examination)? | ☐ Yes | ☒ No |
| T | Have you left the United States to avoid military service in time of war or national emergency? | ☐ Yes | ☒ No |
| U | Have you committed or have you been convicted of a crime involving moral turpitude? | ☐ Yes | ☒ No |

If you answered Yes to any question above, explain fully (Attach a continuation sheet if necessary)

_____
_____
_____
_____

27 ☒ Completed Form G-325A (Biographic Information) is signed, dated and attached as part of this application. Print or type so that all copies are legible.

☐ Completed form G-325A (Biographic Information) is not attached because applicant is under 14 or over 79 years of age.

**Penalties:** You may, by law, be fined up to $10,000, imprisoned up to five years, or both, for knowingly and willfully falsifying or concealing a material fact or using any false document in submitting this application.

Your Certification

I certify, under penalty of perjury under the laws of the United States of America, that the above information is true and correct. Furthermore, I authorize the release of any information from my records which the Immigration and Naturalization Service needs to determine eligibility for the benefit that I am seeking.

Signature _Emadeldin Muntasser_    Date APR 13 1992    Phone Number (617) 938-3690

Signature of Person Preparing Form if Other than Above

I declare that I prepared this document at the request of the person above and that it is based on all information of which I have any knowledge.

Julie R. Perkins, Esq.    BASTONE ASSOCIATES    (Signature) _Julie R. Perkins_    APR 13 1992
(Print Name)    45 Devonshire Street    (Date)
                Boston, MA 02109
                (Address) 617/227-3535   or
                         617/BAS-TONE

G-28 ID Number _____

Volag Number _____

**Stop Here**

(Applicant is not to sign the application below until he or she appears before an officer of the Immigration and Naturalization Service for examination)

I, _____ swear (affirm) that I know the contents of this application that I am signing including the attached documents, that they are true to the best of my knowledge, and that corrections numbered ( ) to ( ) were made by me or at my request, and that I signed this application with my full, true name.

_____
(Complete and true signature of applicant)

Signed and sworn to before me by the above-named applicant at _____ on _____ _____ _____
                                                                       (Month) (Day) (Year)

_____
(Signature and title of officer)

GPO : 1987 - 177-424