## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF MASSACHUSETTS

| | | |
|---|---|---|
| Emadeddin MUNTASSER, Petitioner, | ) ) ) | |
| v. | ) ) ) | Civil No. 04-CV-11259 RWZ |
| Tom RIDGE, Secretary of Department of Homeland Security, et.al., Respondents. | ) ) ) ) ) ) ) | |

## PETITIONER'S REPLY AND MOTION FOR HEARING

The Government's request to remand this matter to CIS lacks merit and should be denied. All they offer is the chimera of wrongdoing, but when examined more closely the substance evaporates.

The Government's argument is that Muntasser is subject to an investigation as to whether he made a false statement to a government official, and that, if he were ultimately convicted of this crime he would be ineligible for naturalization. (Further research indicates that in fact, a mere false statement may not be a "crime involving moral turpitude". See section I below). But, Muntasser has not been charged with any crime, let alone convicted.

The Government's allegation that Muntasser is subject to a criminal investigation lacks the specificity upon which to deny him the basic right of citizenship. The Government's memo does not state when the alleged false statement occurred, neither by year, month nor day. There is no substance as to what was said to whom or in what

context. Indeed, the government offers no evidence of any sort that any investigation is underway, on which facts (or alleged facts) the investigation is based, or evidence that those facts, if true, would support at a minimum a conviction. Mr. Muntasser has never received a letter stating that he is the subject of an investigation. He has never received a "target" letter. Finally, there is no indication that a grand jury has been convened, or that he will be served with any information.

Has this investigation been going on for the past year, or the past two months? If the investigation goes on for the next several years, is that a basis to forestall naturalization? The Government's claim is wild speculation similar to the type of investigation they launched into the Muslim community when all Muslim men from 16 countries had to register with the Immigration Authorities. After exhaustive investigation no terrorist were found. See U.S. Immigration and Customs Enforcement, Department of Homeland Security, Fact Sheet: Changes to the NSEERS Process, (Dec. 1, 2003) (available at <http://www.ice.gov.graphics/news/factsheets/NSEERSFAQ120103.htm) (announcing the suspension of special registration for Muslim men and acknowledging that no charges based on terrorist grounds were made during the course of the program.)

While Muntasser does not concede that he knows when the investigation began, he can reference a meeting with the FBI in January 2003. Has the investigation has been going on for twenty-one months? Based on one brief discussion? It stretches credulity. The Government has conflated being investigated with being indicted or convicted.

I.    False statements to Government Officials May Not be crimes of Moral
      Turpitude and May Not Prevent Naturalization

"Good moral character" is required for naturalization 8 USC §1427(a)(3) "Good Moral Character" is not defined by statute, rather the Immigration Act defines certain

classes of individuals who are ineligible to show good moral character. The Immigration Act classifies individuals who have been convicted of crimes involving moral turpitude to be lacking in good moral character. 8 USC §1101(f). Further, the regulations also provide for a finding of a lack of good moral character in the naturalization context. 8 CFR §316.10(b)(2) states:

> (b) An applicant shall be found to lack good moral character if during the statutory period the applicant:
> (i) Committed one or more crimes involving moral turpitude other than a purely political offense, for which the applicant was convicted, except as specified in 212(a)(2)(ii)(II) of the Act.

Muntasser has not been charged with any crime, nor is there any evidence that he will be charged in the near future. Instead, the government asks this court to lay speculation upon speculation to conclude that an investigation will likely lead to a conviction which would be considered to inhere moral turpitude. Suffice it to say that a finding that a crime involves moral turpitude usually involves some level of fraud or deceit or evil intent. In determining whether a conviction contains moral turpitude the court looks at the statute delineating the offense, not what the defendant did Matter of Short, 20 I&N Dec. 136 (BIA 1989). Further, the analysis turns on the minimum conduct necessary to violate the statute. Matter of Esfandiary, 16 I&N Dec. 659 (BIA 1979).

False statements made to a federal official do not invariably involve moral turpitude. In particular, convictions for false statements without elements of fraud or evil intent have not been considered crimes of moral turpitude for immigration purposes. Hirsh v. Immigration & Naturalization Service, 308 F.2d 562, 567 (9th Cir. 1962); Re Espinosa, 10 I&N Dec. 98, 99-100 (BIA 1962); Re Marchena 12 I&N Dec. 355, 356-357 (BIA 1967); Re BM, 6 I&N Dec 353, 354 (BIA 1945).

In <u>Hirsh</u>, the court found that a conviction for knowingly and willfully making false statements to federal authorities was not enough to show moral turpitude because the statute did not require the government to prove that the defendant had evil intent. <u>Hirsh v. Immigration & Naturalization Service</u>, 308 F.2d at 567. Because of the disjunctive wording of 18 U.S.C. § 80 (now 18 U.S.C. §1001 (a) (1)), the petitioner could be convicted if he had "knowingly and willfully' but without evil intent, made a 'false' but not 'fraudulently' statement." <u>Id</u>. The word willful, the court reasoned, "means no more than that the forbidden act was done deliberately and with knowledge". <u>Id</u>. Simply put, this is not enough to show moral turpitude. <u>Id</u>.; <u>see also, Goldeshtein v. INS</u>, 8 F.3d 645, 648 (9th Cir. 1993) (conviction of willful conduct does not establish evil intent for a crime of moral turpitude.)

In determining whether a crime involves moral turpitude, the definition of the crime must be taken at its minimum. <u>United States ex rel. Robinson v. Day</u>, 51 F.2d 1022, 1022-1023 (2d Cir. 1931) ("Neither the immigration officials, no we, may consider the circumstances under which the crime was in fact committed. When by its definition [a statute] does not necessarily involve moral turpitude, the alien cannot be deported because in the particular instance his conduct was immoral."); <u>Hamdan v. INS</u>, 98 F.3d 183, 187 (5th Cir. 1996) ("As a general rule, if a statue encompasses both acts that do and do not involve moral turpitude, the BIA cannot sustain a deportability finding [predicated on moral turpitude, based] on that statute." In Muntasser's case, to date, there is no claim of a violation of the law, much less a showing that the violation, by definition, will necessarily involve a crime of moral turpitude.

In addition, there is no crime of moral turpitude where the record does not clearly establish a conviction for fraud rather than for false misrepresentation. Re Espinosa, 10 I&N Dec. 98, 98-100 (BIA 1962), (the crime of abetting a foreign visitor "to make a false and fraudulent statement" in an application for an extension of stay, resulting in the alien's conviction under 18 U.S.C. § 1001 was not a crime of moral turpitude since

conviction under the statue would be possible without the element of fraudulent intent, and it was not known whether the conviction was based on fraudulent rather false conduct.); Re Marchena 12 I&N Dec. 355, 356-357 (BIA 1967) (holding no crime of moral turpitude for making a false statement of income in applying for Cuban refugee relief because under the statute the conviction could have been for making either a false or fraudulent statement, and it could not be assumed from the record that her plea of guilty was for a fraudulent statement). These decisions were based on the fact that since the burden is on the government to prove deportability, the Board must take the case in the light most favorable to the respondent. As such, it could not assume that conduct in question was fraudulent rather than false. Matter of B--M--, 6 I&N Dec.806, Interim Decision (BIA 1955); Matter of M--, 4 I&N Dec. 493, Interim Decision (BIA 1951). Again, in the present case, there is no formal record or charges of a crime involving fraudulent conduct. All we have is the Government's memo alleging that a false statement may have occurred at some point in the past.

The Government alleges that Muntasser may have made a false statement in his conversation with the FBI. During Muntasser's brief meeting, however, he had no intention of tricking or deceiving authorities. Though the Government asserts that

incorrect or untrue statement may have been made, willful conduct is not the same as evil conduct, and we cannot assume that the alleged statements were fraudulent.

Furthermore, false statements in violation of the law may or may not be a crime of moral turpitude depending on the language of the particular statue, the elements of the underlying crime, and the specific charges levied against the respondent. In present case, there is no way of determining any of these factors. The Government has brought no charges against Muntasser citing a violation of the law, much less demonstrated that the charges would support a criminal conviction. After twenty-one months of silence, there is no indication that a formal investigation based on alleged facts is underway. Given these circumstances, it would be speculative, at best, to say that Muntasser's brief conversation with the FBI necessarily involves moral turpitude.

## MOTION FOR PREHEARING CONFERENCE

Petitioner moves this court for a pre-hearing conference to further narrow the issues prior to a hearing.

Respectfully submitted
Emadaddin Muntasser
by his attorney

Jeremiah Friedman, BBO# 548031
Kaplan, O'Sullivan, & Friedman
10 Winthrop Sq., 3rd Floor
Boston, MA 02110
(617) 482-4500

## CERTIFICATE OF SERVICE

I, Jeremiah Friedman, certify that I have served a copy of Petitioner's Memorandum in opposition to Remand on Respondents counsel by first class mail addressed to:

Anton Giedt
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA  02210

Linda Wernery
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044

Fred McGrath
District Counsel
Department of Homeland Security
JFK Federal Building, Room 425
Boston, MA  02203

_____
Date

_____
Jeremiah Friedman