## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMADEDDIN MUNTASSER,      ) | |
|                ) | |
|      Petitioner,     ) | |
|                ) | |
|      v.              ) | Civil No. 04-CV-11259 RWZ |
|                ) | |
| THOMAS RIDGE, Secretary of   ) | |
| Department of Homeland Security, <u>et al.,</u> ) | |
|                ) | |
|      Respondents.   ) | |

## MEMORANDUM IN SUPPORT OF RESPONDENTS'
## EMERGENCY MOTION FOR A LIMITED STAY OF PROCEEDINGS

### PRELIMINARY STATEMENT

Respondents seek an immediate and limited stay of the January 6, 2005

naturalization hearing and any discovery[1] because they have evidence that

Muntasser is not eligible for naturalization, but that same evidence is the subject of

a federal criminal investigation and cannot be disclosed in this naturalization

proceeding without jeopardizing that investigation. The experienced federal

prosecutor leading the investigation, Assistant United States Attorney Michael D.

Ricciuti, has requested that the undersigned Civil Division attorneys seek to stay

---

[1] On December 14, 2004, Muntasser sent a letter to counsel for Respondents
requesting law enforcement sensitive evidence relating to the government's
criminal investigation. <u>See</u> Ex. 1 (requesting, <u>inter alia</u> "all reports and statements
including 302 reports by the FBI and/or the Joint Terrorism Task Force concerning
Mr. Muntasser").

this civil litigation.  Concurrently with this motion, Respondents have sought leave to file a declaration from Mr. Ricciuti in support of this motion.[2]   If Respondents disclose this or other sensitive evidence prior to or during a naturalization hearing that is currently scheduled, the evidence will jeopardize the government's investigation.  At the same time, if Muntasser's January 6, 2005 hearing goes forward without the benefit of this evidence, Respondents risk the naturalization of an individual not qualified to join the United States citizenry, because the criminal conduct under investigation demonstrates Muntasser's lack of good moral character, attachment to the Constitution, and poor disposition to the good order and happiness of the United States.  See Berenyi v. INS, 385 U.S. 630, 637 (1967) (recognizing that the government has a "strong and legitimate interest in ensuring that only qualified persons are granted citizenship"); see also 8 U.S.C. § 1427(a) (statutory requirements for naturalization).

Respondents are thus in a classic "Catch-22" situation that can only be resolved by this Court's temporary stay of the January 6, 2005 naturalization hearing and any discovery related thereto, pending resolution of the federal criminal investigation.  Courts have widely recognized that civil proceedings

---

[2]   Respondents seek leave of the Court to file the Declaration of Michael D. Ricciuti ex parte and under seal.

should be stayed where they substantially overlap with a pending criminal investigation, in order to avoid compromising the "secrecy and integrity" of the investigation. See, e.g., Capital Eng'g & Mfg. Co. v. Weinberger, 695 F. Supp. 36, 41 (D.D.C. 1988). A temporary stay here is amply warranted for this reason. Indeed, United States citizenship is a "priceless treasure," Federenko v. INS, 449 U.S. 490, 507 (1981) (quoting Johnson v. Eisentrager, 339 U.S. 763, 791 (1950) (Black, J., dissenting)), that should not be decided based upon a race to the courthouse. Accordingly, Respondents ask that this Court temporarily stay Muntasser's naturalization proceedings pending resolution of the criminal investigation. If granted, Respondents would be pleased to provide the Court, within ninety days of its order, a status report, filed ex parte and under seal, detailing the progress and status of the federal criminal investigation.

## STATEMENT

In their August 9, 2004 Motion to Remand and at a November 23, 2004 hearing on their motion, Respondents advised this Court that Muntasser was the subject of a pending federal criminal investigation regarding whether he had made false statements to the FBI in the course of interviews with Joint Terrorism Task Force ("JTTF") agents. On November 30, 2004, this Court denied Respondents' motion and set a naturalization hearing for January 6, 2004. Thereafter, on

December 14, 2004, despite the fact that this Court never ordered a scheduling conference or set a schedule for discovery, Muntasser sent a letter to counsel for Respondents asking for, inter alia, "all reports and statements including 302 reports by the FBI and/or the Joint Terrorism Task Force concerning Mr. Muntasser."  Ex. 1.  Respondents have not, to date, responded to Muntasser's request.

The criminal investigation of Muntasser is ongoing and active. As explained infra, at least some of the criminal conduct for which Muntasser is being investigated – making false statements to FBI agents – is criminal conduct that bears on Muntasser's good moral character and is both material and relevant to the issue of his eligibility for naturalization.  Indeed, a conviction for such criminal conduct is a statutory bar to naturalization.

## ARGUMENT

### THIS COURT SHOULD TEMPORARILY STAY MUNTASSER'S NATURALIZATION PROCEEDINGS PENDING RESOLUTION OF THE FEDERAL CRIMINAL INVESTIGATION AGAINST HIM.

**A.    The Courts Routinely Stay Civil Actions Relating To A Pending Criminal Investigation In Order To Avoid Compromising The Government's Criminal Case.**

This Court has clear authority to issue a stay of proceedings in this case.  As the First Circuit has stated, "[i]t is apodictic that federal courts posses the inherent power to stay proceedings for prudential reasons."  Microfinancial, Inc. v. Premier Holidays Int'l, 385 F.3d 72, 77 (1st Cir. 2004).  The law is well-established, moreover, that this authority is properly exercised when a civil action threatens to interfere with a related criminal proceeding.  See United States v. Kordel, 397 U.S. 1, 12 n. 17 (1970) (citing cases); Securities and Exchange Commission v. Dresser Industries, Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980).  As one court explained, "it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the same facts is warming up or under way."  Peden v. United States, 512 F.2d 1099 (Cl. Ct. 1975). "When a civil proceeding may interfere with a criminal investigation, it is not uncommon that the United States will seek to stay . . . the civil action in order to protect the criminal investigation."  United States v. Any and All Assets of that Certain Business Known as Shane Co., 147 F.R.D. 99,

101 (M.D.N.C. 1993) (noting further that such requests are "presumptively reasonable").  "The decision whether or not to stay civil litigation in deference to parallel criminal proceedings is discretionary."  <u>Microfinancial, Inc.</u>, 385 F.3d at 77.

The justification for such a stay under such circumstances is plain: the "secrecy and integrity" of a criminal investigation may easily be compromised if litigants are able to use the civil proceedings to obtain a window into the investigation.  <u>Capital Eng'g & Mfg. Co. v. Weinberger</u>, 695 F. Supp. 36, 41 (D.D.C. 1988).  A civil proceeding can easily lead to the premature exposure of sensitive investigative information – including theories of the case, evidentiary discoveries, forensic methods, witness identities, and ongoing and planned investigative initiatives.  Such inside knowledge greatly increases the potential for the litigant (or others) to fabricate defenses, manufacture or conceal evidence, tamper with witnesses, or otherwise frustrate the investigation or prosecution of the criminal case.  <u>See</u> <u>Afro-Lecon, Inc. v. United States</u>, 820 F.2d 1198, 1203 (Fed. Cir. 1987); <u>Founding Church of Scientology v. Kelley</u>, 77 F.R.D. 378, 381 (D.D.C. 1977).

Recognizing the law enforcement interests at stake, courts routinely stay civil proceedings related to a pending criminal investigation in order to avoid

exposing the government's criminal case.  <u>See, e.g.</u>, <u>Capital Eng'g</u>, 695 F. Supp. at

42 (finding plaintiff's litigation interests to be outweighed by public interest in

preserving the secrecy and integrity of criminal investigation); <u>United States v.</u>

<u>Hugo Key & Son, Inc.</u>, 672 F. Supp. 656, 658-59 (D.R.I. 1987) ("[T]his court is

compelled to acknowledge the greater weight of [the government's] interest in

determining the priority of the criminal action."); <u>Founding Church of Scientology</u>,

77 F.R.D. at 381 (same).  Indeed, in a case where the district court had already

stayed a civil forfeiture action for three years, the First Circuit questioned the

government's decision not to seek a further extension of the stay, stating "a

continued stay pending the upcoming criminal trial would seem to have been

justified.  And, if the district court refused one unreasonably, the government

would have a strong basis for appeal."  <u>United States v. Cunan</u>, 156 F.3d 110, 118

n.10 (1st Cir. 1998).

These principles apply throughout the pendency of a criminal investigation,

regardless of whether an indictment has yet issued.  A criminal investigation

requires protection from beginning to end; allowing exposure of the government's

ongoing criminal investigation at any point can place the integrity of the

investigation, as well as any potential prosecution, in jeopardy.  <u>See Souza v.</u>

<u>Schiltgen</u>, No. C-95-3997 MHP, 1996 WL 241824, at *2-3 (N.D. Cal. May 6,

1996) ("[Plaintiff's] contention that a stay is inappropriate because he is merely
under investigation is without merit."); <u>Founding Church of Scientology</u>, 77 F.R.D.
at 380 n.4 ("[T]he policies that necessitate limiting civil discovery when it would
interfere with a criminal investigation are equally applicable whether the plaintiff
seeking discovery is a defendant or merely the subject of a grand jury
investigation."); <u>see also</u> <u>Larouche Campaign v. F.B.I.</u>, 106 F.R.D. 500, 501 (D.
Mass. 1985) (same).  Based on these principles, courts uniformly have stayed civil
proceedings related to ongoing criminal investigations prior to the issuance of any
indictment.  <u>See, e.g.</u>, <u>St. Paul Fire & Marine Ins. Co. v. United States</u>, 24 Cl. Ct.
513, 516-17 (1991); <u>First Merch. Enter. v. Shannon</u>, 1989 WL 25214, at *1-3
(S.D.N.Y. 1989) (citing <u>S.E.C. v. Chestman</u>, 861 F.2d 49, 50 (2d Cir. 1988)
(upholding grant of stay)); <u>Capital Eng'g</u>, 695 F. Supp. at 41-42; <u>Integrated
Generics v. Bowen</u>, 678 F. Supp. 1004, 1009 (E.D.N.Y. 1988); <u>Larouche
Campaign</u>, 106 F.R.D. at 501-02.

Indeed, in the two reported federal cases most analogous to the instant
situation – <u>i.e.</u>, parallel criminal and naturalization or denaturalization proceedings
– both courts stayed the civil naturalization proceedings at the government's behest
pending resolution of the ongoing criminal investigation or proceedings.  <u>See
Souza</u>, 1996 WL 241824; <u>United States v. Bridges</u>, 86 F. Supp. 931 (N.D. Cal.

-8-

1949) (staying denaturalization action pending resolution of criminal proceedings where factual basis for criminal indictment and denaturalization proceeding are "substantially identical").

In <u>Souza</u>, the district court faced the identical situation as this Court in this case. The court in <u>Souza</u> granted the government's motion to stay Souza's naturalization proceedings pending resolution of an ongoing criminal investigation of the applicant. 1996 WL 241824, at *4. The court found that a stay was necessary to protect the government's criminal case against liberal civil discovery procedures. <u>Id.</u> at *3. The court also pointed out that a stay was appropriate because the criminal investigation "could be dispositive on the issue of [the applicant's] eligibility for naturalization[,]" because Souza was required to establish good moral character. <u>Id.</u> at *4. The court correctly observed that requiring the government to institute denaturalization proceedings under 8 U.S.C. § 1451, if Souza were naturalized and subsequently convicted of a crime, would result in "[u]nnecessary litigation." <u>Id.</u> Likewise here, the Court should temporarily stay the naturalization proceedings to protect the government's criminal case, to prevent the unnecessary litigation of subsequent denaturalization proceedings should Muntasser be convicted based on criminal conduct, and to

avoid the possible naturalization of an alien where evidence of his ineligibility could not be presented without jeopardizing a criminal investigation.

**B.    The Pending Criminal Investigation Is Substantially Related To The Naturalization Proceedings.**

Because the alleged criminal conduct underlying the criminal investigation against Muntasser potentially disqualifies him for naturalization, a temporary stay of his naturalization proceedings pending the outcome of the criminal charges is appropriate.  See Afro-Lecon, 820 F.2d at 1204 (holding that "'deferrable civil proceedings constitute improper interference with the criminal proceedings if they churn over the same evidentiary material'") (quoting Peden, 512 F.2d at 1103); Integrated Generics, 678 F. Supp. at 1009 (stay granted where, "although the legal theory of the [civil] complaint differs from the focus of the grand jury investigation, the facts critical to both proceedings are closely related and may be identical").

An applicant for naturalization must establish that for the five years preceding the date he filed his naturalization application and from the date of application until admitted to citizenship – i.e., "the statutory period" – he has been and still is, inter alia, "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."  8 U.S.C. § 1427(a).  An applicant cannot establish

-10-

that he is a person of good moral character if, during the statutory period, he has

been convicted of certain criminal offenses, including crimes involving moral

turpitude.  See 8 U.S.C. § 1101(f).  Lying to the FBI is a crime involving moral

turpitude.  See, e.g., Omagah v. Ashcroft, 288 F.3d 254, 262 (5th Cir. 2002)

(observing that courts have almost universally held that "intentionally deceiving

the government involves moral turpitude"); Zaitona v. INS, 9 F.3d 432, 437 (6th

Cir. 1993) (holding that knowingly making material false statement is a crime of

moral turpitude); Matter of B, 7 I. & N. Dec. 342, 343-45 (BIA 1956) (same).

In addition, an applicant who commits unlawful acts that adversely reflect on

his moral character during the statutory period is barred from establishing

eligibility for naturalization, even if not convicted of an offense.  See 8 C.F.R.

§ 316.10(b)(3)(iii).  The Court may also deny naturalization on a case-by-case

basis if it determines, in its discretion, that the applicant lacks good moral character

based upon the standards of the average citizen in his community.  8 C.F.R.

§ 316.10(a)(2).

A conviction for lying to the FBI would likely render Muntasser statutorily

ineligible for naturalization for having been convicted of crimes involving moral

turpitude.  See 8 U.S.C. §§ 1101(f); 1427(a).  Moreover, regardless of a

conviction, Muntasser's alleged propensity to lie to the nation's law enforcement

officials during a terrorism investigation while, at the same time, applying to join the nation's citizenry speaks volumes about his moral character, attachment to the Constitution, and disposal toward the country's good order and happiness of the United States. Accordingly, these naturalization proceedings and the government's criminal case are substantially related, justifying a temporary stay of these proceedings pending the outcome of the criminal case. See Souza, No. C-95-3997 MHP, 1996 WL 241824; Bridges, 86 F. Supp. 931.

### C. The Pending Criminal Investigation Warrants A Temporary Stay Of The Naturalization Proceedings Under The First Circuit's Test In Microfinancial, Inc.

The First Circuit recently announced a seven-factor balancing test for determining whether civil proceedings should be stayed pending a parallel criminal proceeding. See Microfinancial, Inc., 385 F.3d at 78-79. Under the test, the court should balance: (1) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, (2) the hardship to the defendant if both cases go forward in tandem, (3) the convenience of the criminal and civil court, (4) the interests of third parties, (5) the public interest, (6) the good faith of the litigants, and (7) the status of the cases. Id. In explaining the test, the court emphasized, "[t]he touchstone, of course, is that a district court's discretionary power to stay civil proceedings in deference to parallel criminal proceedings should be invoked when

the interests of justice counsel in favor of such a course." Id. at 78.  Where in

Microfinancial, the court upheld the denial of a stay because potential criminal

defendants – not the government – sought to stay a civil action between private

parties after they had "procrastinated throughout" and after they already "freely

gave lengthy deposition testimony" without invoking their Fifth Amendment

rights, id., a temporary stay is clearly warranted in the instant case under this

seven-part balancing test.

First, Muntasser's interest in litigating his naturalization application will not

suffer any lasting harm as a result of a stay; the requested stay will not preclude

him from pursuing his naturalization application, but, rather only delay the

litigation temporarily.  Indeed, because he has the burden to establish his eligibility

for naturalization, if the proceedings are not stayed, Muntasser could be forced to

choose between taking the Fifth Amendment regarding any criminal conduct and

thereby failing to meet his burden, or answering questions from the government

that could be used against him in future criminal proceedings.  See, e.g., Volmar

Distributors, Inc. v. New York Post, 152 F.R.D. 36, 39-40 (S.D.N.Y. 1993)

(staying discovery in civil proceedings noting that forcing defendants to proceed

"would force [them] into the uncomfortable position of having to choose between

waiving their Fifth Amendment privilege or effectively forfeiting the civil suit").

-13-

The hardship to the government, on the other hand, is significant should the naturalization proceeding be permitted to go forward.  First, Muntasser has already submitted a "discovery request" seeking internal reports and records from the FBI or JTTF.[3]  Muntasser's request demonstrates the principal concern underlying many stays of discovery in civil proceedings – i.e., that the civil litigant may use the more liberal civil discovery provisions to circumvent the procedures regulating criminal discovery.  As the Fifth Circuit observed in its widely-cited decision in Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962) :

> In handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters and in ruling on motions under the civil discovery procedures, a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases.  While the Federal Rules of Civil Procedure have provided a well stocked battery of discovery procedures, the rules governing criminal discovery are far more restricted.  Compare Rules 26 through 37, Fed. R. Civ. P., 28 U.S.C.A. with Rules 15, 16 and 17, Fed. R. Crim. P., 18 U.S.C.A.  Separate policies and objectives support these different rules.

Id. at 487; see, e.g., Hugo Key & Son, Inc., 672 F. Supp. at 658-59 (finding government's interest in protecting criminal case outweighed plaintiff's interest in proceeding expeditiously in civil case).

---

[3] The government reserves its right to refuse such discovery, pending completion of the criminal case.

Allowing these naturalization proceedings to go forward in this case would inevitably compromise the government's criminal case. The important concerns implicated here include: (a) the exposure of details of a criminal investigation, including its methods, targets, subjects, and witnesses; and (b) improper access to materials and witnesses that would not ordinarily be available to criminal defendants. The government simply should not be forced to choose between putting on its criminal case now in order to defeat Muntasser's naturalization or protecting the information by withholding it and thereby risking the naturalization of an ineligible applicant.[4]

The convenience of the courts, which the Microfinancial, Inc. court weighed along with the good faith of the parties and the status of the cases, also counsels in favor of a temporary stay of the naturalization proceedings. Unlike the

---

[4] Moreover, a subsequent denaturalization proceeding, should these proceedings go forward resulting in an order of naturalization and Muntasser is later convicted, simply is not an acceptable alternative. Denaturalization is available only where citizenship was illegally procured or procured by concealment of material fact or by willful misrepresentation, and it switches the burden of proof to the government to establish such procurement by clear, convincing, and unequivocal evidence. See 8 U.S.C. § 1451(a); Fedorenko v. United States, 449 U.S. 490, 505 (1981). So, Muntasser would not only receive the benefit of either (a) access to otherwise inaccessible information from the criminal investigation; or (b) a naturalization hearing where the government may not be able to use all material and relevant evidence against him, but he would also benefit from a huge burden shift. For one suspected of disqualifying criminal conduct, such a benefit would be unwarranted and unprecedented.

circumstances in <u>Microfinancial, Inc.</u>, <u>see</u> 385 F.3d at 79, the instant case has not

been pending for years, and Respondents are not asking this Court to stay matters

for a potentially protracted period.  This case was only filed in June 2004, and after

a brief hearing on Respondents' first response in the case – its motion to remand –

the naturalization hearing was set for January 6, 2004.   Respondents have not

demonstrated any unwarranted "foot-dragging," and there is no reason to believe

these proceedings must be stayed for a potentially protracted period pending

resolution of the criminal charges.  Indeed, Respondents would be pleased to

provide the Court with regular and periodic status reports, filed <u>ex parte</u> and under

seal, detailing the progress and status of the federal criminal investigation.

        In addition, as explained <u>supra</u>, a stay of the naturalization proceedings

protects against the potential duplicative and unnecessary litigation of a subsequent

denaturalization proceeding, should Muntasser be convicted of the offenses with

which he has been charged after being naturalized.  <u>See</u> <u>Souza</u>, 1996 WL 241824,

at *4.  To proceed with Muntasser's naturalization while potentially disqualifying

criminal conduct remains unresolved would simply be putting the cart before the

horse.

-16-

Finally, the public interests strongly counsels in favor of a temporary stay of these naturalization proceedings.[5]  This is one of those "cases of extraordinary public moment," where "the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."  Landis v. North American Co., 299 U.S. 248, 254, 256 (1936).  The public interest in allowing criminal prosecutions to go forward unimpeded cannot be gainsaid.  Public policy "gives priority to the public interest in law enforcement."  Benevolence Int'l Found., Inc. v. Ashcroft, 200 F. Supp. 2d 935, 940 (N.D. Ill. 2002) (quoting Campbell, 307 F.2d at 487); see also Jones v. City of Indianapolis, 216 F.R.D. 440, 452 (S.D. Ind. 2003) ("The public also has an important interest in a potential, untainted criminal prosecution."); Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp. 2d 523, 529 (D.N.J. 1998) (holding that a unimpeded criminal investigations "benefit the public"); Bureerong v. Uvawas, 167 F.R.D. 83, 87 (C.D. Cal. 1996) ("the government's interest in unhindered disposition of [an] extremely complex criminal case looms large over the concerns" of a civil litigant).  The public's interest in law enforcement is given "substantial weight" when evaluating whether a stay is warranted.  See Campbell, 307 F.2d at 487 (finding it both "necessary and wise"

---

[5]  This case does not involve interested third parties.

-17-

that a court give "substantial weight" to the public's interest in law enforcement when balancing a request for a stay against "the right of a civil litigant to a reasonably prompt determination of his civil claims").  Given the circumstances described herein, and in the accompanying declaration, the interests of justice counsel in favor of this Court's temporary stay in deference to the government's criminal case.

## <u>CONCLUSION</u>

For the reasons stated, Respondents respectfully request that the Court temporarily stay the naturalization proceedings in this case, including any discovery, pending resolution of the outstanding criminal investigation against Muntasser.

Respectfully submitted,                         Respectfully submitted,

MICHAEL J. SULLIVAN                       MICHAEL P. LINDEMANN
United States Attorney                          Assistant Director



<u>/s/ Mark Grady, AUSA for Anton Giedt</u>    <u> /s/ Mark Grady for Linda Wernery  </u>
ANTON GIEDT                                LINDA S. WERNERY
Assistant U.S. Attorney                       Senior Litigation Counsel
1 Courthouse Way                            Office of Immigration Litigation
John Joseph Moakley Courthouse          Civil Division, U.S. Dep't of Justice
Suite 9200                                    P.O. 878, Ben Franklin Station
Boston, MA 02210                           Washington, D.C.  20044
                                             (202) 616-4865


Dated:  December 30, 2004               Counsel for Respondents

-19-