## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EMADEDDIN MUNTASSER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 04-CV-11259 RWZ |
| | ) | |
| MICHAEL CHERTOFF,[1] Secretary of | ) | |
| Department of Homeland Security, et al., | ) | |
| | ) | |
| Respondents. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS'
### EMERGENCY MOTION TO DISMISS THIS ACTION, OR IN THE ALTERNATIVE,
### RENEWED MOTION FOR A STAY OF PROCEEDINGS

### PRELIMINARY STATEMENT

On May 11, 2005, a grand jury issued a six-count indictment against Emadeddin Muntasser and Muhammed Mubayyid. The grand jury indicted Mr. Muntasser on the following three counts: (1) participating in a scheme to conceal material facts from the Internal Revenue Service ("IRS"), Federal Bureau of Investigation ("FBI"), and the Department of Homeland Security ("DHS"), in violation of 18 U.S.C. § 1001(a)(1) and 18 U.S.C. § 2; (2) conspiring to defraud the United States, in violation of 18 U.S.C. § 371; and (3) making false statements to the FBI, in violation of 18 U.S.C. § 1001(a)(2). Mr. Muntasser was arrested today. In light of these developments, Respondents seek dismissal of this action or, in the alternative, an immediate stay of these naturalization proceedings because the evidence underlying the indictment also demonstrates that Mr. Muntasser is not eligible for naturalization, but cannot be disclosed in these proceedings without jeopardizing the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Michael Chertoff is hereby substituted for Thomas Ridge as a Respondent in this case.

government's criminal case against him and his co-defendant.[2]  At the same time, if Mr. Muntasser's naturalization proceedings go forward without the benefit of this evidence, Respondents and this Court risk the naturalization of an individual not qualified to join the United States citizenry.  The criminal conduct for which Mr. Muntasser has been indicted – participating in a scheme to conceal material facts from the IRS, FBI, and DHS, conspiring to defraud the United States, and making false statements to the FBI – would preclude favorable findings as to three mandatory requirements for naturalization:  good moral character, attachment to the Constitution, and disposition to the good order and happiness of the United States.  See Berenyi v. INS, 385 U.S. 630, 637 (1967) (recognizing that the government has a "strong and legitimate interest in ensuring that only qualified persons are granted citizenship"); see also 8 U.S.C. § 1427(a) (statutory requirements for naturalization).

As this Court has recognized by generously granting Respondent two earlier temporary stays to permit the government to complete its federal criminal investigation, Respondents are in a classic "Catch-22" situation that can be resolved only by this Court's dismissal of this action or a temporary stay of the May 12, 2005 naturalization hearing and any discovery related thereto, pending final resolution of the federal criminal charges.  Indeed, it appears that Mr. Muntasser recognizes that he, too, is in a precarious situation because, even prior to his arrest, he took the unusual step of indicating that he did not intend to testify in support of his application despite the fact that he has

---

[2]  In anticipation of a May 12, 2005 naturalization hearing, this Court directed the parties to exchange witness lists, if any, by May 9, 2005, and directed the government likewise to provide  Mr. Muntasser certain FBI 302 reports.  In anticipation of the instant motion, and, in light of Mr. Muntasser's failure to identify himself as a witness even though he has the burden to establish eligibility for naturalization, Respondents provided that they would not call any witnesses on May 12, 2005.  Should this Court deny the instant motion and reschedule a naturalization hearing, Respondents respectfully request an opportunity to reassess the evidence and/or witnesses they would offer to contest Mr. Muntasser's naturalization.

the burden of establishing eligibility for naturalization.  Respondents submit that dismissal without prejudice is appropriate here because:  (1) proceedings on the merits of Mr. Muntasser's petition has not occurred; (2) there is no statute of limitations preventing Mr. Muntasser from simply refiling a petition for naturalization upon final disposition of the federal criminal charges against him; and (3) a federal court will now try, to a criminal proof standard, charges which may, if Muntasser is convicted, control a subsequent naturalization determination as a matter of law.  Moreover, Respondents maintain that Mr. Muntasser cannot establish his eligibility for naturalization without testifying with regard to his qualifications – something he is apparently not prepared to do.

In the alternative, this Court should stay the naturalization proceedings.  Courts have widely recognized that civil proceedings should be stayed where they substantially overlap with a pending criminal indictment.  See, e.g., Securities and Exchange Commission v. Dresser Industries, Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980); Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); Volmar Distributors, Inc. v. New York Post, 152 F.R.D. 36, 39-40 (S.D.N.Y. 1993); Capital Eng'g & Mfg. Co. v. Weinberger, 695 F. Supp. 36, 41 (D.D.C. 1988).  A temporary stay here is amply warranted for this reason. Indeed, United States citizenship is a "priceless treasure," Federenko v. INS, 449 U.S. 490, 507 (1981) (quoting Johnson v. Eisentrager, 339 U.S. 763, 791 (1950) (Black, J., dissenting)), that should not be decided based upon a race to the courthouse.  Accordingly, Respondents ask that this Court dismiss this action, or, in the alternative, temporarily stay Mr. Muntasser's naturalization proceedings pending final resolution of the federal criminal indictment against him.

## STATEMENT

On December 30, 2005, Respondents moved for a temporary stay of these proceedings on the ground that there was an ongoing and related federal criminal investigation into criminal conduct that impacts Mr. Muntasser's eligibility for naturalization. On January 5, 2005, this Court granted Respondents' motion, and set a scheduling conference for April 7, 2005. On that date, Respondents again moved for short continuance for the government to complete its criminal investigation, and this Court granted Respondents an additional thirty days. The government has now completed its criminal investigation, the result of which is a May 11, 2005 grand jury indictment charging Muntasser with one count of participating in a scheme to conceal material facts from the Internal Revenue Service ("IRS"), Federal Bureau of Investigation ("FBI"), and the Department of Homeland Security ("DHS"), in violation of 18 U.S.C. § 1001(a)(1) and 18 U.S.C. § 2; one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 371; and one count of making false statements to the FBI, in violation of 18 U.S.C. § 1001(a)(2). As explained infra, the criminal conduct for which Mr. Muntasser has been indicted bears on his good moral character and is thus both material and relevant to the issue of his eligibility for naturalization. Indeed, a conviction on any of the criminal counts lodged would implicate a statutory bar to naturalization.

## ARGUMENT

### THIS COURT SHOULD DISMISS THIS MATTER OR, IN THE ALTERNATIVE, TEMPORARILY STAY MR. MUNTASSER'S NATURALIZATION PROCEEDINGS PENDING A FINAL RESOLUTION OF THE FEDERAL CRIMINAL INDICTMENT AGAINST HIM.

In the interest of judicial efficiency, Respondents submit that the Court should dismiss this action without prejudice to Muntasser refiling a petition for naturalization, if appropriate, upon final resolution of the federal criminal charges against him. Dismissal is appropriate here because: (1)

proceedings on the merits of Mr. Muntasser's petition has not yet occurred; (2) there is no statute of limitations preventing Mr. Muntasser from simply refiling a petition for naturalization upon final disposition of the federal criminal charges against him, see 8 U.S.C. § 1447(b) (2000); and (3) a federal court will now try, to a criminal proof standard, charges which may, if Mr. Muntasser is convicted, control a subsequent naturalization determination as a matter of law.[3]  Moreover, Mr. Muntasser has failed to identify himself as a potential witness in his naturalization proceedings. Inasmuch as Mr. Muntasser has the burden of establishing that he meets each and every requirement for naturalization, see Berenyi, 385 U.S. at 637 (stating that it is "universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect[,]" and any "doubts should be resolved in favor of the United States and against the claimant") (internal quotation marks and citation omitted), Respondents maintain that Mr. Muntasser cannot prevail without testifying in support of his application.  Thus, if this Court agrees that Mr. Muntasser's naturalization proceedings must await the final disposition of the federal criminal indictment pending against him, Respondents submit that it serves no purpose for the Court to keep this case pending on its docket, as opposed to dismissing it without prejudice.  In the alternative, this Court should stay these proceedings pending final resolution of the  federal criminal charges against Mr. Muntasser.

A.    **The Courts Routinely Stay Civil Actions Relating To A Pending Criminal Indictment To Avoid Compromising The Government's Criminal Case.**

This Court has clear authority to issue a stay of proceedings in this case.  As the First Circuit has stated, "[i]t is apodictic that federal courts posses the inherent power to stay proceedings for

---

[3]  If, upon conclusion of Mr. Muntasser's criminal proceedings, DHS denies Mr. Muntasser's naturalization application, he may appeal that determination within the agency, and, if denied again, may obtain de novo review and, if requested, a de novo hearing on the application in federal court. See 8 U.S.C. §§ 1421(c); 1447(a).

prudential reasons." <u>Microfinancial, Inc. v. Premier Holidays Int'l</u>, 385 F.3d 72, 77 (1st Cir. 2004).

The law is well-established, moreover, that this authority is properly exercised when a civil action

threatens to interfere with a related criminal proceeding.  <u>See</u> <u>United States v. Kordel</u>, 397 U.S. 1,

12 n. 17 (1970) (citing cases); <u>Dresser Industries, Inc.</u>, 628 F.2d at 1375.  As one court explained,

"it has long been the practice to 'freeze' civil proceedings when a criminal prosecution involving the

same facts is warming up or under way."  <u>Peden v. United States</u>, 512 F.2d 1099 (Cl. Ct. 1975).

"When a civil proceeding may interfere with a criminal investigation, it is not uncommon that the

United States will seek to stay . . . the civil action in order to protect the criminal investigation."

<u>United States v. Any and All Assets of that Certain Business Known as Shane Co.</u>, 147 F.R.D. 99,

101 (M.D.N.C. 1993) (noting further that such requests are "presumptively reasonable").  "The

decision whether or not to stay civil litigation in deference to parallel criminal proceedings is

discretionary."  <u>Microfinancial, Inc.</u>, 385 F.3d at 77.

  The justifications for such a stay under such circumstances is plain:  (1) the "secrecy and

integrity" of a pending criminal action may easily be compromised if litigants are able to use the civil

proceedings to obtain a window into the government's criminal case, <u>Capital Eng'g & Mfg. Co.</u>, 695

F. Supp. at 41, and (2) given that a conviction on any of the counts in the indictment could be

dispositive on Muntasser's eligibility for naturalization, a stay prevents unnecessary and duplicative

litigation, <u>United States v. Bridges</u>, 86 F. Supp. 931 (N.D. Cal. 1949).  A civil proceeding can easily

lead to the premature exposure of sensitive criminal evidence.  Such inside knowledge greatly

increases the potential for the litigant (or others) to fabricate defenses, manufacture or conceal

evidence, tamper with witnesses, or otherwise frustrate the investigation or prosecution of the

criminal case.  See Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1203 (Fed. Cir. 1987);

Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 381 (D.D.C. 1977).

Recognizing the law enforcement interests at stake, courts consistently stay civil proceedings

related to a pending criminal indictment in order to avoid exposing the government's criminal case.

See, e.g., Trustees of the Plumbers and Pipefitters National Pension Fund, 886 F. Supp. at 1139

(staying civil proceedings where defendants were indicted for related conduct); United States v.

Hugo Key & Son, Inc., 672 F. Supp. 656, 658-59 (D.R.I. 1987) ("[T]his court is compelled to

acknowledge the greater weight of [the government's] interest in determining the priority of the

criminal action."); Founding Church of Scientology, 77 F.R.D. at 381 (staying civil proceedings

resolution of criminal case).  Indeed, in a case in which the district court had already stayed a civil

forfeiture action for three years, the First Circuit questioned the government's decision not to seek

a further extension of the stay, stating "a continued stay pending the upcoming criminal trial would

seem to have been justified.  And, if the district court refused one unreasonably, the government

would have a strong basis for appeal."  United States v. Cunan, 156 F.3d 110, 118 n.10 (1st Cir.

1998).

Indeed, in granting Respondents' two earlier requests for temporary stays for the government

to complete its criminal investigation, this Court recognized that these principles apply even before

an indictment has issued.  See also Souza v. Schiltgen, No. C-95-3997 MHP, 1996 WL 241824, at

*2-3 (N.D. Cal. May 6, 1996) ("[Plaintiff's] contention that a stay is inappropriate because he is

merely under investigation is without merit."); Founding Church of Scientology, 77 F.R.D. at 380

n.4 ("[T]he policies that necessitate limiting civil discovery when it would interfere with a criminal

investigation are equally applicable whether the plaintiff seeking discovery is a defendant or merely

the subject of a grand jury investigation."); see also Larouche Campaign v. F.B.I., 106 F.R.D. 500,

501 (D. Mass. 1985) (same).

Where an indictment has issued, which is now the case here, the basis for a stay of related

civil proceedings is even stronger.  As one court explained:

> A stay of a civil case is most appropriate where a party to the civil case has already
> been indicted for the same conduct [at issue in the civil proceeding] for two reasons;
> first the likelihood that a defendant may make incriminating statements is greatest
> after an indictment has issued, and second, the prejudice to the plaintiffs in the civil
> case is reduced since the criminal case will likely be quickly resolved due to Speedy
> Trial Act considerations.

Trustees of the Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc., 886

F. Supp. 1134, 1139 (S.D.N.Y. 1995); see also Microfinancial, Inc., 385 F.3d at 79; Dresser

Industries, Inc., 628 F.2d at 1375; Volmar Distributors, Inc., 152 F.R.D. at 39-40.

Moreover, in the two reported federal cases most analogous to the instant situation – i.e.,

parallel criminal and naturalization or denaturalization proceedings – both courts stayed the civil

naturalization proceedings at the government's behest pending resolution of the ongoing criminal

investigation or proceedings.  See Souza, 1996 WL 241824; Bridges, 86 F. Supp. 931 (staying

denaturalization action pending resolution of criminal proceedings where factual basis for criminal

indictment and denaturalization proceeding are "substantially identical").

In Souza, the district court faced the identical situation as this Court in this case.  The court

in Souza granted the government's motion to stay Souza's naturalization proceedings pending

resolution of an ongoing criminal investigation of the applicant. 1996 WL 241824, at *4.  The court

found that a stay was necessary to protect the government's criminal case against liberal civil

discovery procedures.  Id. at *3.  The court also pointed out that a stay was appropriate because the

criminal investigation "could be dispositive on the issue of [the applicant's] eligibility for

naturalization[,]" because Souza was required to establish good moral character. Id. at *4. The court correctly observed that requiring the government to institute denaturalization proceedings under 8 U.S.C. § 1451, if Souza were naturalized and subsequently convicted of a crime, would result in "[u]nnecessary litigation." Id.

Likewise here, the Court should temporarily stay the naturalization proceedings to protect the government's criminal case, to prevent the unnecessary litigation of subsequent denaturalization proceedings should Mr. Muntasser be convicted, and to avoid the possible naturalization of an alien where evidence of his ineligibility could not be presented without jeopardizing the government's pending criminal case.

**B.    The Government's Pending Criminal Case Is Substantially Related To The Naturalization Proceedings**

Because a conviction for any of the alleged criminal conduct underlying the grand jury's three-count indictment issued against Mr. Muntasser potentially disqualifies him for naturalization, a temporary stay of his naturalization proceedings pending the outcome of the criminal charges is appropriate. See Afro-Lecon, 820 F.2d at 1204 (holding that "'deferrable civil proceedings constitute improper interference with the criminal proceedings if they churn over the same evidentiary material'") (quoting Peden, 512 F.2d at 1103); Integrated Generics, 678 F. Supp. at 1009 (stay granted where, "although the legal theory of the [civil] complaint differs from the focus of the grand jury investigation, the facts critical to both proceedings are closely related and may be identical").

An applicant for naturalization must establish that for the five years preceding the date he filed his naturalization application and from the date of application until admitted to citizenship – i.e., "the statutory period" – he has been and still is, inter alia, "a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good

order and happiness of the United States." 8 U.S.C. § 1427(a).  An applicant cannot establish that he is a person of good moral character if, during the statutory period, he has been convicted of certain criminal offenses, including an aggravated felony or a crime involving moral turpitude.  <u>See</u> 8 U.S.C. § 1101(f)(3) & (8).  Conspiring to defraud the United States is an aggravated felony and a crime involving moral turpitude.  <u>See</u> 8 U.S.C. § 1101(a)(43) (M) (providing that an offense involving fraud or tax evasion in which the loss to the victim or government is greater than $10,000 is an aggravated felony); <u>see also</u> <u>Jordan v. De George</u>, 341 U.S. 223, 229 (1951) ("fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude").  Lying to the FBI and participating in a scheme to conceal material facts from the IRS, FBI, and DHS are also crimes involving moral turpitude.  <u>See, e.g.</u>, <u>Omagah v. Ashcroft</u>, 288 F.3d 254, 262 (5th Cir. 2002) (observing that courts have almost universally held that "intentionally deceiving the government involves moral turpitude"); <u>Zaitona v. INS</u>, 9 F.3d 432, 437 (6th Cir. 1993) (holding that knowingly making material false statement is a crime of moral turpitude); <u>Matter of B</u>, 7 I. & N. Dec. 342, 343-45 (BIA 1956) (same).

In addition, an applicant who commits unlawful acts that adversely reflect on his moral character during the statutory period is barred from establishing eligibility for naturalization, even if not convicted of an offense.  <u>See</u> 8 C.F.R. § 316.10(b)(3)(iii).  The Court may also deny naturalization on a case-by-case basis if it determines, in its discretion, that the applicant lacks good moral character based upon the standards of the average citizen in his community.  8 C.F.R. § 316.10(a)(2).

A conviction on any of the counts in the indictment would likely render Mr. Muntasser statutorily ineligible for naturalization for having been convicted of an aggravated felony or a crime involving moral turpitude during the statutory period.  See 8 U.S.C. §§ 1101(f); 1427(a).  Moreover, regardless of a conviction, Mr. Muntasser's alleged propensity to lie to the nation's law enforcement officials during a terrorism investigation and to lie to and defraud the nation's tax authorities while, at the same time, applying to join the nation's citizenry speaks volumes about his moral character, attachment to the Constitution, and disposal toward the country's good order and happiness of the United States.  Accordingly, these naturalization proceedings and the government's criminal case are substantially related, justifying a temporary stay of these proceedings pending the final outcome of the federal criminal indictment.  See Souza, No. C-95-3997 MHP, 1996 WL 241824; Bridges, 86 F. Supp. 931.

C.    **The Pending Criminal Indictment Warrants A Temporary Stay Of The Naturalization Proceedings Under The First Circuit's Test In Microfinancial, Inc.**

The First Circuit applies a seven-factor balancing test for determining whether civil proceedings should be stayed pending a parallel criminal proceeding.  See Microfinancial, Inc., 385 F.3d at 78-79.  Under the test, the court should balance:  (1) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, (2) the hardship to the defendant if both cases go forward in tandem, (3) the convenience of the criminal and civil court, (4) the interests of third parties, (5) the public interest, (6) the good faith of the litigants, and (7) the status of the cases.  Id. In explaining the test, the court emphasized, "[t]he touchstone, of course, is that a district court's discretionary power to stay civil proceedings in deference to parallel criminal proceedings should be invoked when the interests of justice counsel in favor of such a course."  Id. at 78.  Where in

-11-

Microfinancial, the court upheld the denial of a stay because potential criminal defendants – not the government – sought to stay a civil action between private parties after they had "procrastinated throughout" and after they already "freely gave lengthy deposition testimony" without invoking their Fifth Amendment rights, id., a temporary stay is clearly warranted in the instant case under this seven-part balancing test.

First, Mr. Muntasser's interest in litigating his naturalization application will not suffer any lasting harm as a result of a stay. The requested stay will not preclude him from pursuing his naturalization application, but rather only delay the litigation temporarily. Indeed, because he has the burden to establish his eligibility for naturalization, if the proceedings are not stayed, Mr. Muntasser could be forced to choose between taking the Fifth Amendment regarding the criminal conduct alleged in the grand jury's indictment and thereby failing to meet his burden, or answering questions from the government that could be used against him in its criminal case. See, e.g., Volmar Distributors, Inc., 152 F.R.D. at 39-40 (staying discovery in civil proceedings noting that forcing defendants to proceed "would force [them] into the uncomfortable position of having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit"). Without attempting to speak on his behalf, it appears that Mr. Muntasser has already recognized his predicament by not identifying himself as a potential witness in his naturalization proceedings, even though he can hardly meet his burden of establishing his qualifications for naturalization without testifying in support of his application. See Berenyi, 385 U.S. at 637; 8 U.S.C. § 1427(e).

The hardship to the government, on the other hand, is significant should the naturalization proceeding be permitted to go forward. First, pursuant to Mr. Muntasser's request and this Court's order, if this case goes forward Respondents could be forced to turn over to Mr. Muntasser certain

FBI 302 reports relating to some of the criminal conduct charged in the grand jury's three-count indictment or risk the naturalization of an ineligible applicant.  Mr. Muntasser's request demonstrates the principal concern underlying many stays of discovery in civil proceedings – i.e., that the civil litigant may use the more liberal civil discovery provisions to circumvent the procedures regulating criminal discovery.  As the Fifth Circuit observed in its widely-cited decision in Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962):

> In handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters and in ruling on motions under the civil discovery procedures, a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases.  While the Federal Rules of Civil Procedure have provided a well stocked battery of discovery procedures, the rules governing criminal discovery are far more restricted.  Compare Rules 26 through 37, Fed. R. Civ. P., 28 U.S.C.A. with Rules 15, 16 and 17, Fed. R. Crim. P., 18 U.S.C.A.  Separate policies and objectives support these different rules.

Id. at 487; see, e.g., Hugo Key & Son, Inc., 672 F. Supp. at 658-59 (finding government's interest in protecting criminal case outweighed plaintiff's interest in proceeding expeditiously in civil case).

Allowing a naturalization proceeding to go forward while Mr. Muntasser is under indictment would inevitably compromise the government's criminal case against him and his co-defendant.  The important concerns implicated here include:  (a) the exposure of the details of the government's criminal case, including its methods, targets, subjects, and witnesses; and (b) improper access to materials and witnesses that would not ordinarily be available to criminal defendants.  The government simply should not be forced to choose between putting on its criminal case in this civil proceeding in order to defeat Mr. Muntasser's naturalization or protecting the information by withholding it and thereby risking the naturalization of an ineligible applicant.

Nor is a subsequent denaturalization proceeding, should these proceedings go forward resulting in an order of naturalization and Mr. Muntasser is later convicted, an acceptable alternative.

-13-

Denaturalization is available only where citizenship was illegally procured or procured by concealment of material fact or by willful misrepresentation, and it switches the burden of proof to the government to establish such procurement by clear, convincing, and unequivocal evidence. See 8 U.S.C. § 1451(a); Fedorenko v. United States, 449 U.S. 490, 505 (1981). In this case, Mr. Muntasser would not only receive the benefit of either (a) access to otherwise inaccessible information from the criminal investigation; or (b) a naturalization hearing where the government may not be able to use all material and relevant evidence against him, but he would also benefit from a huge burden shift. For one suspected of disqualifying criminal conduct, such a benefit would be unwarranted and unprecedented.

The convenience of the courts, which the Microfinancial, Inc. court weighed along with the good faith of the parties and the status of the cases, also counsels in favor of a temporary stay of the naturalization proceedings. Unlike the circumstances in Microfinancial, Inc., see 385 F.3d at 79, the instant case has not been pending for years, and Respondents are not asking this Court to stay matters for a potentially protracted period. Respondents have not demonstrated any unwarranted "foot-dragging," and indeed have completed a major criminal investigation culminating in a six-count indictment against Mr. Muntasser and a co-defendant according to the time table established by this Court. Now that Mr. Muntasser has been indicted, Speedy Trial Act considerations will ensure the criminal case against him is not unduly delayed, thus there is no reason to believe these proceedings must be stayed for a potentially protracted period.

In addition, as explained supra, a stay of the naturalization proceedings protects against the potential duplicative and unnecessary litigation of a subsequent denaturalization proceeding, should Mr. Muntasser be convicted of the offenses with which he has been charged. See Souza, 1996 WL

-14-

241824, at *4.  To proceed with Muntasser's naturalization while he is the subject of a three-count indictment alleging potentially disqualifying criminal conduct would simply be putting the cart before the horse.

Finally, the public interests strongly counsels in favor of a temporary stay of these naturalization proceedings.[4]  This is one of those "cases of extraordinary public moment," where "the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."  <u>Landis v. North American Co.</u>, 299 U.S. 248, 254, 256 (1936).  The public interest in allowing criminal prosecutions to go forward unimpeded cannot be gainsaid.  Public policy "gives priority to the public interest in law enforcement."  <u>Benevolence Int'l Found., Inc. v. Ashcroft</u>, 200 F. Supp. 2d 935, 940 (N.D. Ill. 2002) (quoting <u>Campbell</u>, 307 F.2d at 487); <u>see also</u> <u>Jones v. City of Indianapolis</u>, 216 F.R.D. 440, 452 (S.D. Ind. 2003) ("The public also has an important interest in a potential, untainted criminal prosecution."); <u>Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.</u>, 7 F. Supp. 2d 523, 529 (D.N.J. 1998) (holding that a unimpeded criminal investigations "benefit the public"); <u>Bureerong v. Uvawas</u>, 167 F.R.D. 83, 87 (C.D. Cal. 1996) ("the government's interest in unhindered disposition of [an] extremely complex criminal case looms large over the concerns" of a civil litigant).  The public's interest in law enforcement is given "substantial weight" when evaluating whether a stay is warranted.  <u>See</u> <u>Campbell</u>, 307 F.2d at 487 (finding it both "necessary and wise" that a court give "substantial weight" to the public's interest in law enforcement when balancing a request for a stay against "the right of a civil litigant to a reasonably prompt determination of his civil claims").  Given

---

[4]  This case does not involve interested third parties.

the circumstances described herein, the interests of justice strongly counsel in favor of this Court's

temporary stay in deference to the government's criminal case.

## **CONCLUSION**

For the reasons stated, Respondents respectfully request that the Court dismiss this action,

or in the alternative, temporarily stay the naturalization proceedings in this case, including any

discovery, pending final resolution of the outstanding criminal indictment issued against Mr.

Muntasser.

<table>
<tr>
<td></td>
<td>Respectfully submitted,</td>
</tr>
<tr>
<td>MICHAEL J. SULLIVAN<br>United States Attorney</td>
<td>MICHAEL P. LINDEMANN<br>Assistant Director</td>
</tr>
<tr>
<td> /s/ Mark T. Quinlivan<br>MARK T. QUINLIVAN<br>Assistant U.S. Attorney<br>ANTON GIEDT<br>Assistant U.S. Attorney<br>1 Courthouse Way<br>John Joseph Moakley Courthouse<br>Suite 9200<br>Boston, MA 02210</td>
<td> /s/ Linda S. Wernery<br>LINDA S. WERNERY<br>Senior Litigation Counsel<br>Office of Immigration Litigation<br>Civil Division, U.S. Dep't of Justice<br>P.O. 878, Ben Franklin Station<br>Washington, D.C.  20044<br>(202) 616-4865</td>
</tr>
<tr>
<td>Dated:  May 12, 2005</td>
<td>Counsel for Respondents</td>
</tr>
</table>