# Zalkind, Rodriguez, Lunt & Duncan LLP

ATTORNEYS AT LAW

## 65a Atlantic Avenue, Boston, Massachusetts 02110

TELEPHONE (617) 742-6020

FAX (617) 742-3269

www.zrld.com

Norman S. Zalkind

Elizabeth A. Lunt

David Duncan
also member of PA Bar

Inga S. Bernstein

William B. VanLonkhuyzen
also member of CA Bar

Monica Pastorok
also member of NY and CA Bars

Malick W. Ghachem

Of Counsel:
Barbara Equen Rodriguez

September 29, 2005

Lisa Orso, Courtroom Clerk
Chambers of the Honorable Rya Zobel
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Re:    <u>Emadeddin Muntasser v. Michael Chertoff, et al.</u>, Civil No. 04-CV-11259-RWZ

Dear Ms. Orso,

Pursuant to the Court's order of May 13, 2005, please find attached the petitioner's status report to Judge Zobel in the above-referenced action.

Sincerely,

Malick W. Ghachem

MWG/mwg
Enclosure

cc:    The Honorable Dennis Saylor
       Mark Quinlivan, AUSA
       Anton Giedt, AUSA
       Linda S. Wernery, Office of Immigration Litigation, DOJ
       Aloke Chakravarty, AUSA
       Stephanie Siegmann, AUSA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EMADEDDIN MUNTASSER,                     )
                                         )
                Petitioner,              )
                                         )
        v.                               )          Civil No. 04-CV-11259 RWZ
                                         )
MICHAEL CHERTOFF, Secretary of           )
Department of Homeland Security, et al., )
                                         )
                Respondents.             )

## PETITIONER'S STATUS REPORT

Now comes the petitioner, Emadeddin Muntasser, and submits the following status report

concerning Crim. No. 05-40026-FDS, also pending in the District of Massachusetts.  On May 12,

2005, one day before Mr. Muntasser's naturalization hearing before this Court was to have taken

place, the Government brought an indictment charging Mr. Muntasser and a co-defendant,

Muhamed Mubayyid, with concealing material facts and aiding and abetting (Count One); and

conspiracy to defraud the United States (Count Two).  Mr. Mubayyid was also charged with

filing false tax returns (Counts Three, Four, and Five), and Mr. Muntasser was also charged with

making a false statement (Count Six).  The government does not charge Mr. Muntasser with

filing false tax returns.  Rather, it charges him with concealing information from the IRS that it

claims was necessary to determine whether a particular organization qualified for charitable tax

status.

Mr. Muntasser has recently been invited by the Government to agree to a dismissal of his

-1-

naturalization suit against the United States in light of the ongoing criminal prosecution. He respectfully declines this invitation and instead invites the Government to dismiss its criminal case against him. It is becoming clearer by the day that the Government's criminal case was a form of retaliation against Mr. Muntasser for having the audacity to insist that the Government adhere to the statutory deadline for granting a naturalization hearing, and that it treat immigrants of all backgrounds with equal dignity and respect. It has also been the petitioner's position that the Government brought its indictment in order to interfere with the jurisdiction of the judge to whom the case was randomly and fairly assigned, pursuant to the District Court's regular case assignment procedure. By the same token, it seems that the Government purposely convened a grand jury in the central rather than eastern division of the district of Massachusetts in order to avoid the risk that its criminal case would end up before that very same judge. As evidence therefor, one need only consult the "Criminal Case Cover Sheet" that accompanied the Government's criminal complaint against Mr. Muntasser (attached hereto as Exhibit A), which initially stated (in typescript) "Boston and elsewhere" and "Suffolk and elsewhere" as the city and county wherein the alleged offense took place. Before submitting this cover sheet to the district court clerk, however, the AUSA who signed this document struck out "Boston" and "Suffolk" by hand and replaced both with "Worcester." This was done even though the charitable organization that is at issue in the criminal case, Care International, is a Boston-based rather than Worcester-based institution. Hence, one additional issue that arises in this case and in the criminal case is whether the government has engaged in improper forum shopping to gain tactical advantage.

　　　　The petitioner's position that the Government's criminal case was brought in a spirit of

retaliation and with an eye towards further frustrating Mr. Muntasser's quest for citizenship is also borne out by the lack of substance in the indictment that was actually returned (attached as Exhibit B). The Government was clearly not prepared to bring a meritorious criminal case against Mr. Muntasser at the time it indicted him; indeed, it remains unprepared to do so at this time. Instead, the indictment relies on prejudicial and unsubstantiated "media reports," an irredeemably vague and utterly confused use of basic concepts in Islamic history, a seeming ignorance of our own Government's covert and overt support throughout the late 1980s and early 1990s of the very same groups that it alleges the defendant supported, and transparently selective prosecutorial tactics in the area of charitable tax law. This is to say nothing of the indictment's disregard for the relevant statute of limitations, its failure to satisfy the statutory requirement of materiality, or its facially unconstitutional aspects, including charges and specifications that implicate the defendant's exercise (or alleged exercise) of constitutionally protected rights of free speech and free press. For example, under Count Two, the indictment charges that Care International "published and distributed a newsletter . . . which actively promoted 'jihad,' or holy war, involving 'mujahideen,' or Islamic holy warriors," and that Care "published and distributed an English translation of 'Join the Caravan,' a pro-jihad book authored by Abdallah Azzam." (The indictment does not mention that the CIA actively promoted the mujahideen in Afghanistan.[1])

In the meantime, the Government has delayed discovery of critical materials such as the defendant's own recorded statements and the unredacted version of a key affidavit in support of a

---

[1] For one of many discussions, <u>see</u> the Pulitzer Prize-winning account by STEVE COLL, GHOST WARS (rev. ed. 2005).

search warrant, evidently in the name of purported "national security" concerns. These and other materials are necessary to the preparation of Mr. Muntasser's case, and their continued withholding can only serve the purpose of delaying a trial in this matter until such unforeseen time as the Government is able to come up with a more convincing basis for prosecution.

Far from being willing to agree to a dismissal of his naturalization suit, Mr. Muntasser's position remains what it was on the day he was indicted. He intends to mount a vigorous defense and will assert constitutional arguments. He believes that he will be vindicated by the federal judicial system. And he continues to hope that he will go on to become a citizen of the United States. Accordingly, he respectfully requests that this Court continue its stay of Civil No. 04-CV-11259 until the conclusion of Mr. Muntasser's criminal case, which can follow as soon as the Government turns over all of the relevant discovery material in that case and allows the Court in Worcester to get to the heart of the matter.


Respectfully submitted,


/s/ Norman S. Zalkind
Norman S. Zalkind (BBO# 538880)
Malick W. Ghachem (BBO# 661018)
Zalkind, Rodriguez, Lunt & Duncan LLP
65a Atlantic Ave.
Boston, MA 02110

/s/ Jeremiah Friedman
Jeremiah Friedman
Kaplan, O'Sullivan, & Friedman LLP
10 Winthrop Square, 3rd Floor
Boston, MA 02110

CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2005, a copy of the above document was served by U.S. Mail to Linda S. Wernery, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, P.O. Box 878, Ben Franklin Station, Washington D.C. 20044, and by electronic filing to the following:

Mark Quinlivan, Assistant U.S. Attorney
Anton Giedt, Assistant U.S. Attorney
1 Courthouse Way
John Joseph Moakley Courthouse
Suite 9200
Boston, MA 02210

/s/ Malick W. Ghachem
Malick W. Ghachem

**"Exhibit A"**

JS 45 (5/97) - (Revised USAO MA 3/25/02)

**Criminal Case Cover Sheet**                    **U.S. District Court - District of Massachusetts**

Place of Offense:                    Category No. II_____    Investigating Agency  FBI_____

City   Boston and elsewhere          **Related Case Information:**

County   Suffolk and elsewhere       Superseding Ind./ Inf.   None_____    Case No.  05 - 1657-CBS
                                     Same Defendant _____            New Defendant _____
                                     Magistrate Judge Case Number                _____
                                     Search Warrant Case Number   03-M-1028 and 1029-JGD
                                     R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   Emadeddin Muntasser_____          Juvenile   ☐ Yes   ☒ No

Alias Name _____

Address _____

Birth date: 12/10/64    SS#: 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    Sex: M    Race: _____    Nationality: Libya

Defense Counsel if known:   Norman Zalkind          Address: 65a Atlantic Avenue
                                                              Boston, MA
Bar Number: _____

**U.S. Attorney Information:**

AUSA    Michael Ricciuti/Stephanie Siegmann_____    Bar Number if applicable _____

Interpreter:   ☐ Yes   ☒ No          List language and/or dialect: _____

Matter to be SEALED:   ☒ Yes   ☐ No

        ☐ Warrant Requested          ☐ Regular Process          ☐ In Custody

**Location Status:**

Arrest Date:        None_____

☐ Already in Federal Custody as   _____   in   _____ .
☐ Already in State Custody _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by _____   on _____

Charging Document:   ☒ Complaint   ☐ Information   ☐ Indictment

Total # of Counts:   ☐ Petty _____   ☐ Misdemeanor _____   ☒ 2 Felony _____

Continue on Page 2 for Entry of U.S.C. Citations

☒        I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
         accurately set forth above.

Date:   4/6/05                    Signature of AUSA:

**"Exhibit B"**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim. No. 4:05CR40026FDS |
| | ) | |
| v. | ) | Violations: |
| | ) | 18 U.S.C. §371 – Conspiracy |
| MUHAMED MUBAYYID, and | ) | to Defraud United States |
| EMADEDDIN Z. MUNTASSER, | ) | 26 U.S.C. 7206(1) – False |
| | ) | Tax Return |
| | ) | 18 U.S.C. §1001(a)(1) – Scheme |
| | ) | to Conceal Material Facts |
| Defendants. | ) | 18 U.S.C. §1001(a)(2) – Making |
| | ) | False Statements |
| | ) | 18 U.S.C. §2 – Aiding and |
| | ) | Abetting |

**INDICTMENT**

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

1.  The Al-Kifah Refugee Center ("Al-Kifah") was a supporter of "mujahideen," or Muslim holy warriors, engaged in "jihad," or violent, religiously-based military conflict overseas.

2.  In the early 1990s, there were branch offices of Al-Kifah in several cities, including Boston.  EMMADEDDIN MUNTASSER ("MUNTASSER") was involved in operating the Al-Kifah Boston office.  Al-Kifah in Boston published a pro-jihad newsletter called "Al-Hussam," an Arabic term meaning "the Sword."

3.  In 1993, media reports linked the New York office of Al-Kifah to the 1993 World Trade Center bombing.  At or about the time of those media reports, MUNTASSER founded and incorporated in Massachusetts Care International, Inc. ("Care"), a purported Muslim charitable organization.

1

4. MUNTASSER represented in Care's Articles of
Incorporation, filed with the Massachusetts Secretary of State's
Office on or about April 13, 1993, that Care was "organized
exclusively for charitable, religious, educational, and
scientific purposes, including but not limited to, engage in,
establish, promote, contribute and carry out human welfare,
charitable and relief activities, programs, projects,
organizations, institution and funds." MUNTASSER served as
Care's President from on or about 1993-1996.

5. Despite MUNTASSER's representation in Care's Articles of
Incorporation, Care, like Al-Kifah, was engaged in activities
involving the solicitation and expenditure of funds to support
and promote the mujahideen and jihad, including the distribution
of pro-jihad publications. Care was located at Al-Kifah's Boston
office, and assumed publication of Al-Kifah's pro-jihad
newsletter, Al-Hussam.

6. Shortly after Care was incorporated in Massachusetts,
MUNTASSER sought a tax exemption for Care from the Internal
Revenue Service ("IRS") pursuant to 26 U.S.C. § 501(c)(3) on the
basis that Care was a charitable organization.

7. The IRS is responsible for reviewing applications under
26 U.S.C. §501(c)(3) and the related regulations, 26 C.F.R.
§1.501(c)(3)1(c)(1). To qualify for exemption under that
section, an organization must file an IRS Form 1023, the

2

Application for Recognition of Exemption Under Section 501(c)(3)
of the Internal Revenue Code.  In it, the organization must
demonstrate that it is organized and operated exclusively for
charitable exempt purposes, and any non-exempt purpose must be
incidental and not substantial to its operation.  The IRS makes
the initial determination as to whether an organization qualifies
for tax exempt status based upon the information contained in the
IRS Form 1023.  If the IRS grants an organization tax exempt
status under 26 U.S.C. §501(c)(3) and its regulations, any
donations made to that organization are tax deductible.

8.  On or about June 1, 1993, MUNTASSER, on behalf of Care,
filed IRS Form 1023 (hereinafter, "the Form 1023 application").
MUNTASSER signed the form under the pains and penalties of
perjury that the "application, including the accompanying
schedules and attachments, ... to the best of my knowledge [are]
true, correct and complete."  In the Form 1023 application,
MUNTASSER stated that Care was recently incorporated, would
become operational shortly, and would provide charitable services
such as "provid[ing] assistance to victims of natural and man-
made disasters ... primarily in Bosnia and later in African
countries. ... [and] develop[ing] a program for orphan
sponsorships."  Attached to the Form 1023 application were copies
of Care's Articles of Incorporation and By-Laws.

9.  Nowhere in the Form 1023 application did MUNTASSER

3

disclose that Care planned to support jihad and the mujahideen by
soliciting contributions for, and distributing publications to
promote, jihad and the mujahideen.

10.    The Form 1023 application asked whether "the
organization [is] the outgrowth of (or successor to) another
organization, or does it have a special relationship with another
organization by reason of interlocking directorates or other
factors? ... If ... answered "Yes," explain."  MUNTASSER answered
"no" to this question, and concealed from the IRS in the Form
1023 application and elsewhere that Care was an outgrowth of, and
successor to, Al-Kifah.

11.    On or about October 1993, the IRS granted Care tax
exempt status under 26 U.S.C. §501(c)(3) and its regulations
based upon the information MUNTASSER supplied in Care's Form 1023
application.  In its letter notifying MUNTASSER of this decision,
the IRS instructed MUNTASSER to report any changes in Care's
"purposes, character, or method of operation" to the IRS.

12.    After the IRS grants an organization tax exempt status
under 26 U.S.C. §501(c)(3) and its regulations, the charitable
organization is required to file with the IRS a Form 990, "Return
of Organization Exempt from Income Tax" ("Form 990 Tax Return"),
each year in which its contributions exceed $25,000.  The IRS
uses information contained on the Form 990 Tax Returns to
determine whether an organization granted a tax exemption under

4

26 U.S.C. §501(c)(3) and its regulations is operating in accordance with those authorities and thus still qualifies for its tax exempt status. Question 76 of the IRS Form 990 specifically asks the organization if it had engaged in any activity not previously reported to the IRS. If the IRS determines that the organization is not operating consistently with its tax exempt status, the IRS would revoke such a designation. Once the IRS revokes an organization's tax exempt status under 26 U.S.C. §501(c)(3) and its regulations, contributions or donations made to that organization are not tax deductible.

13. From on or about 1993 to 2003, Care, through MUNTASSER, MUHAMED MUBAYYID ("MUBAYYID") and others, filed Form 990 tax returns to the IRS. MUBAYYID served as Care's Treasurer from on or about 1997-2003. None of these tax returns reported any change in activity from Care's 1023 application. No tax return disclosed that Care was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad, including the distribution of pro-jihad publications.

14. As a result of Care's fraudulent tax filings, the IRS continued to accord Care tax exempt status under 26 U.S.C. §501(c)(3) and its regulations from in or about 1993 until in or about 2003. From on or about 1993 to 2003, Care collected

5

approximately $1.7 million dollars in donations, which was
considered tax deductible by the IRS.

15. Had MUNTASSER and/or MUBAYYID provided truthful
information to the IRS about Care, Care would not have been
accorded, nor would have enjoyed, tax exempt status under 26
U.S.C. §501(c)(3) and its regulations.

16. In or about April, 1999, MUNTASSER was interviewed by
the Federal Bureau of Investigation, Joint Terrorism Task Force.
MUNTASSER made material omissions when he stated that Care was a
charitable organization and did not disclose that Care was
engaged in activities involving the solicitation and expenditure
of funds to support and promote the mujahideen and jihad.
MUNTASSER also stated that in 1994 or 1995, he traveled to
Pakistan. MUNTASSER concealed that during that trip, he also
traveled to Afghanistan. In fact, MUNTASSER had traveled to
Afghanistan in or about 1994-95 in furtherance of Care's
activities.

17. In or about October, 2002, MUNTASSER filed an
Application for Naturalization with the then-named Immigration
and Naturalization Service (now the Department of Homeland
Security). In that application, MUNTASSER failed to list his
association with either Care or Al-Kifah, as required. In
addition, MUNTASSER did not disclose that he had traveled to
Afghanistan, as required. In fact, MUNTASSER was a member of and

6

responsible for activities of Al-Kifah and Care and had traveled
to Afghanistan in or about 1994-95 in furtherance of Care's
activities.

18.  In or about April, 2003, MUNTASSER was interviewed by
the Federal Bureau of Investigation, Joint Terrorism Task Force.
In that interview, MUNTASSER claimed that Care served
humanitarian purposes, did not disclose that Care was engaged in
activities involving the solicitation and expenditure of funds to
support and promote the mujahideen and jihad, and falsely denied
having traveled to Afghanistan.

19.  On or about November 6, 2003, MUNTASSER was interviewed
by the Department of Homeland Security about his Application for
Naturalization filed in 2002, as described above.  At this
interview, MUNTASSER admitted that he had traveled to Pakistan
and Afghanistan in 1994 and 1995.  MUNTASSER also admitted that
he had been a member of Care and "Alkifah Refugee Center" from
1993-1996.

20.  On or about April 6, 2004, MUNTASSER was interviewed by
the Department of Homeland Security and provided a sworn
statement.  Among other things, MUNTASSER admitted that he
traveled to Pakistan and Afghanistan in the winter of 1994 in
furtherance of his "humanitarian work" for Care and claimed that
Care was a humanitarian organization.

21.  MUBAYYID was interviewed by the Federal Bureau of

7

MUBAYYID was interviewed by the Federal Bureau of

Investigation, Joint Terrorism Task Force, in 2001 and concealed that Care was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad.

22.    Through the acts described above, MUNTASSER and MUBAYYID deprived the United States of material information to which it was entitled to perform its lawful functions.

8

**COUNT ONE:**      **(18 U.S.C. §1001(a)(1) - Scheme to Conceal**
                **Material Facts; Aiding and Abetting, 18 U.S.C. §2)**

The Grand Jury charges that:

The allegations contained in paragraphs 1-22 are hereby re-
alleged and incorporated by reference as if fully set forth
herein.

From a date unknown to the Grand Jury, but at least from in
or about April 1993, and continuing thereafter until in or about
April 2003, in the District of Massachusetts and elsewhere,

**EMADEDDIN Z. MUNTASSER, and**
**MUHAMED MUBAYYID,**

defendants herein, in a matter within the jurisdiction of the
executive branch of the Government of the United States, did
knowingly and willfully falsify, conceal and cover up by trick,
scheme and device material facts from the Internal Revenue
Service ("IRS") of the Treasury Department, the Federal Bureau of
Investigation ("FBI"), and the Immigration and Naturalization
Service, now part of the Department of Homeland Security,
("INS/DHS"), to wit: the Defendants concealed the fact that Care
International, Inc., was an outgrowth of and successor to the Al-
Kifah Refugee Center and was engaged in non-charitable activities
involving the solicitation and expenditure of funds to support
and promote mujahideen and jihad.

All in violation of 18 U.S.C. §1001(a)(1) and §2.

9

**COUNT TWO:**        **(18 U.S.C. §371 – Conspiracy to Defraud the United States)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-22 are hereby re-alleged and incorporated by reference as if fully set forth herein.

From a date unknown to the Grand Jury, but at least from in or about April 1993, and continuing thereafter until in or about April 2003, in the District of Massachusetts and elsewhere,

**EMADEDDIN Z. MUNTASSER, and
MUHAMED MUBAYYID,**

defendants herein, did unlawfully, willfully and knowingly conspire, combine, confederate and agree with each other and others known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, interfering, obstructing and defeating through deceit, craft, trickery and dishonest means the lawful functions of the Internal Revenue Service ("IRS") of the Treasury Department in the ascertainment, assessment, and determination of whether Care International, Inc., qualified and should be designated as a §501(c)(3) organization in 1993 and should continue to be accorded status as §501(c)(3) organization thereafter.

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

The manner and means by which the conspiracy was sought to be accomplished included, among other things, the following

10

during the dates of the alleged conspiracy:

1.   In or about June 1993, defendant MUNTASSER executed and, with the assistance of others, filed an Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code on behalf of Care, which contained false information.   This application detailed Care's planned future charitable activities such as providing financial assistance to widows and orphans.   In this application, MUNTASSER did not disclose that: Care was an outgrowth or successor to Al-Kifah; Care's planned activities included support for jihad and the mujahideen; and Care would engage in activities involving the solicitation of contributions for, and distribution of publications to support, jihad and the mujahideen.

2.   Between on or about 1993 and 2002, the defendants reported on Care's tax returns, Returns of Organization Exempt From Income Tax (Form 990), that Care distributed money for various charitable purposes, among others, providing financial assistance to orphans and widows, food distribution, and providing grants to other welfare organizations.   The defendants did not disclose to IRS that Care was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad, including the printing and distribution of pro-jihad publications.

3.   Between on or about 1993 and 2001, Care published

11

reports and articles in support of the mujahideen in its
newsletter or on its website.

4.    Between on or about 1994 and 2001, Care distributed
brochures entitled "Zakat Calculation Guide", in which the
mujahideen was identified as one of the eight categories of
eligible recipients.

5.    Between in or about 1998 to in or about September 2001,
Care's website, www.care-intl.org, contained direct solicitations
for tax deductible donations to support the mujahideen.

                    OVERT ACTS OF THE CONSPIRACY

    In furtherance of the conspiracy, and to effect the objects
thereof, the following overt acts were committed in the District
of Massachusetts and elsewhere:

6.    In or about April 1993, defendant MUNTASSER filed Care's
Articles of Incorporation with the Massachusetts Secretary of
State's office.

7.    In or about June 1993, defendant MUNTASSER executed and,
with the assistance of others, filed an Application for
Recognition of Exemption Under Section 501(c)(3) of the Internal
Revenue Code on behalf of Care.  This application detailed Care's
planned future charitable activities such as providing financial
assistance to widows and orphans.  MUNTASSER did not disclose
that: Care was an outgrowth of or successor to Al-Kifah; Care's
planned activities included support for jihad and the mujahideen;

                               12

and Care would engage in activities involving the solicitation of contributions for, and distribution of publications to support, jihad and the mujahideen.

8.   Between on or about 1993 and 1997, Care published and distributed a newsletter, Al-Hussam (an Arabic term meaning "the Sword"), formerly the newsletter of Al-Kifah, which actively promoted "jihad," or holy war, involving "mujahideen," or Islamic holy warriors.

9.   Between in or about 1998 to in or about September 2001, Care published articles about the military operations and activities of the mujahideen on its website.

10.   Between in or about 1994 and 2001, Care printed and distributed solicitations for tax deductible donations to support the mujahideen.

11.   At a date unknown between in or about 1995 and 2001, Care published and distributed an English translation of "Join the Caravan," a pro-jihad book authored by Abdullah Azzam.

12.   MUNTASSER and MUBAYYID signed and filed with the Internal Revenue Service false tax returns, Returns of Organization Exempt from Income Tax (Form 990s), for calendar years 1994, 1995, 1997, 1999, and 2000.

13.   Between 2001 and 2003, defendants MUNTASSER and MUBAYYID made materially incomplete and misleading statements to the Federal Bureau of Investigation about Care's activities,

13

claiming that Care was a charitable organization and failing to disclose that Care was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad, in part, for the purpose of continuing the within conspiracy.

   All in violation of 18 U.S.C. §371 and §2.

14

**COUNT THREE:**   **(26 U.S.C. §7206(1) - False Tax Return)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-22 are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about June 7, 2002, in the District of Massachusetts and elsewhere,

**MUHAMED MUBAYYID,**

defendant herein, did willfully make and subscribe a Form 990, Return of Organization Exempt from Income Tax, for Care International, Inc., for the 1997 calendar year, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said Form 990 defendant then and there well knew and believed was not true and correct as to every material matter in that Line 76 was falsely answered to wit: that Care had never disclosed to the IRS in any tax return or other filing that it was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad.

All in violation of 26 U.S.C. §7206(1).

**COUNT FOUR:**    **(26 U.S.C. §7206(1) - False Tax Return)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-22 are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about November 4, 2000, in the District of Massachusetts and elsewhere,

**MUHAMED MUBAYYID,**

defendant herein, did willfully make and subscribe a Form 990, Return of Organization Exempt from Income Tax, for Care International, Inc., for the 1999 calendar year, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said Form 990 defendant then and there well knew and believed was not true and correct as to every material matter in that Line 76 was falsely answered to wit: Care had never disclosed to the IRS in any tax return or other filing that it was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad.

All in violation of 26 U.S.C. §7206(1).

16

**COUNT FIVE:**    **(26 U.S.C. §7206(1) - False Tax Return)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-22 are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about July 31, 2001, in the District of Massachusetts and elsewhere,

**MUHAMED MUBAYYID,**

defendant herein, did willfully make and subscribe a Form 990, Return of Organization Exempt from Income Tax, for Care International, Inc., for the 2000 calendar year, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said Form 990 defendant then and there well knew and believed was not true and correct as to every material matter in that Line 76 was falsely answered to wit: Care had never disclosed to the IRS in any tax return or other filing that it was engaged in activities involving the solicitation and expenditure of funds to support and promote the mujahideen and jihad.

All in violation of 26 U.S.C. §7206(1).

17

**COUNT SIX:**        **(18 U.S.C. §1001(a)(2)- False Statements)**

The Grand Jury further charges that:

The allegations contained in paragraphs 1-22 are hereby re-alleged and incorporated by reference as if fully set forth herein.

On or about April 7, 2003, in the District of Massachusetts,

**EMADEDDIN Z. MUNTASSER,**

defendant herein, in a matter within the jurisdiction of the executive branch of the Government of the United States, and specifically within the jurisdiction of the Federal Bureau of Investigation, did knowingly and willfully make materially false, fictitious or fraudulent statements and representations, to wit, that he had not traveled to Afghanistan in or about 1994.

All in violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
MICHAEL D. RICCIUTI
B. STEPHANIE SIEGMANN
Assistant United States Attorneys

DISTRICT OF MASSACHUSETTS                   May 11, 2005

Returned into the District Court by the Grand Jurors and filed.

_____
Deputy Clerk

19

✎JS 45 (5/97) – (Revised USAO MA 6/29/04)

| **Criminal Case Cover Sheet** | **U.S. District Court - District of Massachusetts** |

**Place of Offense:** __Massachusetts__   **Category No.** __II_____   **Investigating Agency** __FBI/IRS_____

**City** __Westboro and Boston_____   **Related Case Information:**

**County** __Worcester and Suffolk_____

Superseding Ind./ Inf. _____   Case No. _____
Same Defendant _____   New Defendant _____
Magistrate Judge Case Number __05-1657-CBS_____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name   __EMADEDDIN Z. MUNTASSER_____   Juvenile   ☐ Yes   ☒ No

Alias Name _____

Address _____

Birth date (Year only): __1964__   SSN (last 4 #): __0538__   Sex __M__ Race: _____   Nationality: __Libyan__

**Defense Counsel if known:** _____   **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** __Michael D. Ricciuti and B. Stephanie Siegmann__   **Bar Number if applicable** _____

**Interpreter:** ☐ Yes ☒ No   **List language and/or dialect:** _____

**Matter to be SEALED:** ☒ Yes   ☐ No

☒ **Warrant Requested**   ☐ **Regular Process**   ☐ **In Custody**

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____   in _____ .
☐ Already in State Custody _____   ☐ Serving Sentence   ☐ Awaiting Trial
☐ On Pretrial Release:   Ordered by _____   on _____

**Charging Document:**   ☐ Complaint   ☐ Information   ☒ Indictment

**Total # of Counts:**   ☐ Petty _____   ☐ Misdemeanor _____   ☒ Felony   __3__

Continue on Page 2 for Entry of U.S.C. Citations

☒   I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:  May 11, 2005**   **Signature of AUSA:** _[signature]_

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number  (To be filled in by deputy clerk):** _____

**Name of Defendant** ___EMADEDDIN Z. MUNTASSER_____

## U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 18 U.S.C. § 1001(a)(1) | Scheme to Conceal Material Facts | 1 |
| Set 2 | 18 U.S.C. § 371 | Conspiracy to Defraud United States | 2 |
| Set 3 | 18 U.S.C. § 1001(a)(2) | Making False Statements | 6 |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:**

✎JS 45  (5/97) – (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**                     **U.S. District Court - District of Massachusetts**

**Place of Offense:**  Massachusetts         **Category No.** II          **Investigating Agency**  FBI/IRS

**City**  Westboro and Boston          **Related Case Information:**

**County**  Worcester and Suffolk       Superseding Ind./ Inf. _____     Case No. _____
                                         Same Defendant _____     New Defendant  X _____
                                         Magistrate Judge Case Number  05-1657-CBS _____
                                         Search Warrant Case Number  _____
                                         R 20/R 40 from District of  _____

**Defendant Information:**

Defendant Name  MUHAMED MUBAYYID          Juvenile   ☐ Yes   ☒ No

Alias Name  _____

Address  _____

Birth date (Year only):  1965  SSN (last 4 #):  5346  Sex  M  Race: _____   Nationality:  Lebanese

**Defense Counsel if known:**  _____     **Address:**  _____

**Bar Number:**  _____

**U.S. Attorney Information:**

**AUSA**  Michael D. Ricciuti and B. Stephanie Siegmann    **Bar Number if applicable**  _____

**Interpreter:**   ☐ Yes  ☒ No          **List language and/or dialect:**  _____

**Matter to be SEALED:**   ☒ Yes   ☐ No

   ☒ **Warrant Requested**          ☐ **Regular Process**          ☐ **In Custody**

**Location Status:**

**Arrest Date:**  _____

☐ Already in Federal Custody as  _____   in  _____ .
☐ Already in State Custody  _____   ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by  _____   on  _____

**Charging Document:**   ☐ Complaint      ☐ Information      ☒ Indictment

**Total # of Counts:**   ☐ Petty  _____   ☐ Misdemeanor  _____   ☒ Felony  5

**Continue on Page 2 for Entry of U.S.C. Citations**

☒     I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are
      accurately set forth above.

**Date:**  May 11, 2005      **Signature of AUSA:** _____

✎JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**   **MUHAMED MUBAYYID** _____

## U.S.C. Citations

| | Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|---|
| Set 1 | 18 U.S.C. § 1001(a)(1) | Scheme to Conceal Material Facts | 1 |
| Set 2 | 18 U.S.C. § 371 | Conspiracy to Defraud United States | 2 |
| Set 3 | 26 U.S.C. §7206(1) | Making False Tax Returns | 3-5 |
| Set 4 | | | |
| Set 5 | | | |
| Set 6 | | | |
| Set 7 | | | |
| Set 8 | | | |
| Set 9 | | | |
| Set 10 | | | |
| Set 11 | | | |
| Set 12 | | | |
| Set 13 | | | |
| Set 14 | | | |
| Set 15 | | | |

**ADDITIONAL INFORMATION:**